Jane SNOWDEN, Individually and on behalf of all others the same or similarly situated, Plaintiff,

v.

BIRMINGHAM–JEFFERSON COUNTY TRANSIT AUTHORITY, a Public Corporation, and William T. Coleman, Jr., in his official capacity as Secretary of Transportation, Defendants.

Civ. A. No. 75–G–330–S.

United States District Court, N. D. Alabama, S. D.

June 24, 1975.

Cleveland Thornton, Marvin H. Campbell, Legal Aid Society of Birmingham, Birmingham, Ala., for plaintiff.

Don B. Long, Jr. and John D. Quenelle, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for Birmingham-Jefferson County Transit.

Wayman G. Sherrer, U. S. Atty., Henry I. Frohsin, Asst. U. S. Atty., Birmingham, Ala., for Dept. of Transp.

## MEMORANDUM OPINION

GUIN, District Judge.

This action came on further to be heard on April 11, 1975, upon the motions for summary judgment filed by defendants Birmingham-Jefferson County Transit Authority (BJCTA) and William T. Coleman, Jr., Secretary of Transportation of the United States of America (USDOT), the affidavits and other documentary evidence filed by the parties, the testimony taken herein on April 1, 1975, and the briefs of counsel. This court on April 1, 1975, entered an order refusing plaintiff's motions for a temporary restraining order and for a preliminary injunction. That order is hereby incorporated by reference in this memorandum opinion.

Plaintiff Jane Snowden is a physically handicapped resident of the Birmingham metropolitan area who, by reason of her handicap, is forced to ambulate by means of a wheelchair. She, on her own behalf and on behalf of all others similarly situated, sues BJCTA and USDOT, contending that BJCTA's development and operation of a public mass transportation bus system in Birmingham, and the furnishing of federal financial assistance therefor by USDOT, when such bus system is not accessible to physically handicapped persons including those confined to wheelchairs, violates Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), Section 16(a) of the Urban Mass Transportation Act of 1964 as amended (49 U.S.C. § 1612(a)) and the fifth and fourteenth amendments to the Constitution of the United States. Plaintiff seeks a declaration of her rights and an injunction restraining US-DOT from extending further federal financial assistance to BJCTA and restraining BJCTA from acquiring any new buses or other mass transportation vehicles which are not accessible to the handicapped, including those confined to wheelchairs, until adequate and effective public mass transportation has been made available to them.

1. *Statement of the Facts:*

The following facts appear to be undisputed and are therefore found for purposes of this action:

The program of federal assistance to urban mass transportation systems, authorized by the Urban Mass Transportation Act of 1964 as amended (49 U.S.C. § 1601 *et seq.*) (the UMT Act), is administered by the Secretary of Transportation, presently William T. Coleman, Jr., pursuant to Reorganization Plan No. 2 of 1968 (33 F.R. 6965, 82 Stat. 1369). All of the powers of the secretary under the UMT Act and related laws pertaining to federal assistance to urban mass transportation systems have been delegated to the Urban Mass Transportation Administrator (UMTA), presently Frank C. Herringer (49 C.F.R. § 1.50).

On May 21, 1974 UMTA approved a capital facilities grant to BJCTA under Section 3 of the UMT Act (49 U.S.C. § 1602) for Project No. AL–03–0003, which includes the purchase of 22 new 45-passenger diesel transit buses, a bus garage and office complex, and related items. The buses involved had been advertised for public competitive bidding, an award was made to the low bidder, A. M. General Corporation, and the buses were scheduled to be delivered at some time beginning about the end of April, 1975. These buses were not to be specially designed or equipped to enable passengers confined to wheelchairs to board, ride and alight with convenience and safety for themselves and other passengers, but were to include certain special equipment and features such as stanchions, grab-rails, step-well lighting, power-assisted doors, etc., designed to make them more readily and safely usable by elderly and physically handicapped persons other than those confined to wheelchairs. At the present time no manufacturer in the United States produces a standard size (45-passenger) diesel transit bus designed and equipped for safe and convenient use by passengers confined to wheelchairs. Neither has any smaller vehicle designed and equipped for safe and convenient use by persons confined to wheelchairs been manufactured and tested in regular line haul urban mass transportation service in the United States.

The Urban Mass Transportation Administration has, pursuant to Section 16 of the UMT Act (49 U.S.C. § 1612) carried on a substantial program of technical studies projects and research, development and demonstration projects designed to ascertain the nature and extent of the need of elderly and physically handicapped persons for mass transportation service, and to develop and demonstrate facilities, equipment and operating techniques to meet that need. Such program includes one major project known as "TRANSBUS," designed to develop a new generation of buses for general use in federally assisted urban mass transportation service in the United States. As part of that project, three prototype standard-size diesel transit buses, each designed and equipped to accommodate passengers confined to wheelchairs, have been developed and built, and are presently being demonstrated and tested in actual revenue service in four major cities to determine their safety, reliability and economy, and their acceptability and attractiveness to all segments of the public, including the elderly and the physically handicapped. At present these prototypes are not available for manufacture and sale and distribution to meet the needs of mass transportation.

BJCTA does not at the present time have any mass transit vehicles designed and equipped to accommodate passengers confined to wheelchairs, but permits such passengers to ride on its regular transit vehicles when they are able, alone or with the assistance of others, to do so.

2. *Urban Mass Transportation Act of 1964 as amended:*

█ Plaintiff relies on Section 16(a) of the UMT Act (49 U.S.C. § 1612(a)) to support her claim that BJCTA's procurement and operation and UMTA's financial assistance of buses which are not

designed and equipped to accommodate passengers confined to wheelchairs violates her rights and those of the class which she represents. That statute provides as follows:

*It is hereby declared to be the national policy* that elderly and [physically] handicapped persons have the same right[s] as other persons to utilize mass transportation facilities and services; that *special efforts shall be made* in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this Act) *should* contain provisions implementing this policy. [Emphasis supplied.]

This section requires only that "special efforts" be made toward making mass transportation services available to all persons.

Special efforts have been made by BJCTA by the installation of special equipment and features such as stanchions, grab-rails, step-well lighting, power-assisted doors, etc., to aid handicapped persons other than those confined to wheelchairs in boarding and alighting from its buses. Modern technology has not progressed to the point of doing any more for those persons confined to a wheelchair than is already being done by BJCTA. In view of the present state of available bus technology, as above described, it would seem inherently unreasonable to bring all new bus procurement to a halt while new equipment is being designed, developed, tested and produced. Such a course of action would harm the general public without in any way aiding plaintiff and the class she represents.

### 3. *Section 504 of the Rehabilitation Act of 1973:*

 Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), upon which plaintiff also relies, is, like section 16(a) of the UMT Act, a statement of federal policy. It reads as follows:

No *otherwise qualified* handicapped individual in the United States, as defined in section 706(6) of this title, shall, *solely by reason of his handicap,* be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. [Emphasis supplied.]

The affidavit of Charles W. Croft, resident manager of BJCTA, dated March 31, 1975, and attached to the defendant's motion for summary judgment, pointed out that persons confined to wheelchairs are permitted to ride as passengers on BJCTA vehicles. Although it is necessary for persons handicapped in this manner to arrange for someone to help them board and alight from the bus, these persons are allowed to use the transportation vehicles in question. Thus, it cannot be said that persons who ambulate by wheelchair are excluded from using the defendant's transportation system. For this reason, the court finds no violation of the Rehabilitation Act of 1973 on the part of BJCTA or on the part of UMTA, and hence that act provides plaintiff and the class she represents with no cause of action.

### 4. *The Equal Protection Clause of the 14th Amendment:*

Plaintiff also contends that she and the class she represents are being deprived by defendants of rights under the fifth and fourteenth amendments to the Constitution of the United States, presumably the "due process" or "equal protection" clauses. This unconstitutional deprivation is claimed to result not from plaintiff and her class being prohibited from riding, but from defendants' failure to provide vehicles specially designed and equipped so that they and their wheelchairs can ride on defendants' buses safely and conveniently.

The court has not been directed to any case which holds that a local governmental body is under an affirmative duty grounded in and arising from the Consti-

tution of the United States to provide any special class or type of physical facilities to accommodate any special class or type of citizen, in the absence of a statute which so requires. In a somewhat analogous case involving public housing, the Supreme Court of the United States recently said:

> We do not denigrate the importance of decent, safe, and sanitary housing. But the Constitution does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality . . . . Absent constitutional mandate, the assurance of adequate housing and the definition of landlord-tenant relationship are legislative, not judicial, functions. *Lindsey, et al. v. Normat, et al.,* 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972); see also *Gautreaux v. Romney,* 363 F.Supp. 690, 691 (N.D. Ill.1973), rev'd on other grounds 503 F.2d 930 (7th Cir. 1974).

Plaintiff cannot credibly maintain that access to public transportation facilities is a "fundamental right" on a parity with the right to an education at public expense which must be made available to all on equal terms. *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *Mills v. Board of Education,* 348 F.Supp. 866, 874, 875 (D.D.C.1972). That being so, the Constitution merely requires a rational basis for any discrimination among persons similarly situated. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1885); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1332, 22 L.Ed.2d 600 (1969). The facts of this case do not appear to involve any invidious discrimination against similarly situated persons. Such discrimination as may in fact exist results from technological and operational difficulties in designing, producing and operating the kind of special vehicles needed to allow plaintiff and the class she represents to utilize BJCTA's bus system with safety and convenience for themselves and other passengers. The affidavits of UMTA Administrator Herringer and BJCTA Resident Manager Croft, which are uncontroverted, show that there is no device presently developed and proven reliable for use in a standard full-size urban transit bus which would make that bus fully accessible to plaintiff and her class. As the Supreme Court noted in *Yakus v. United States,* "The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable." 321 U.S. 414, 424, 64 S.Ct. 660, 88 L.Ed. 834 (1943).

For the foregoing reasons, the motions for summary judgment filed by the defendants are granted and this action is dismissed.