UNITED HANDICAPPED FEDERA-
TION, a Minnesota Non-Profit
Corporation, et al., Plaintiffs,

v.

Camille D. ANDRE, Individually and in
his official capacity as Chief Adminis-
trator of Metropolitan Transit Com-
mission, et al., Defendants.

No. 4–75 Civ. 627.

United States District Court,
D. Minnesota,
Fourth Division.

March 11, 1976.

1298

William M. Mahlum, John E. Brauch and Marilyn Knudsen, St. Paul, Minn., for plaintiffs.

David S. Doty and James R. Steilen, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn., for Metropolitan Transit Commission defendants.

Robert G. Renner, U. S. Atty., by John M. Lee, Asst. U. S. Atty., Minneapolis, Minn., together with Joseph A. Blundon, Asst. Chief Counsel, and Robert W. Batchelder, Attorney-Advisor, Urban Mass Transportation Administration, Washington, D. C., for defendants Robert E. Patricelli and William Coleman, Jr.

Henry E. Halladay, David A. Ranheim and Edward J. Pluimer, Dorsey, Windhorst, Hannaford, Whitney & Halladay, West & Halladay, Minneapolis, Minn., James F. Holden, South Bend, Ind., for defendant AM General Corp.

MEMORANDUM AND ORDER

ALSOP, District Judge.

The plaintiffs' motion for a preliminary injunction was denied by the court by order dated February 24, 1976. Presently before the court are the motions of the defendants to dismiss the complaint based on lack of subject matter jurisdic-

tion and failure to state a claim upon which relief can be granted.

As a part of its consideration of this matter, the court has been presented with and has included in its consideration matters outside the pleadings in the form of depositions and affidavits and will therefore treat the motions to dismiss for failure to state a claim as motions for summary judgment. Rule 12(b), Fed.R.Civ.P. A motion for summary judgment should be granted when "there is no genuine issue as to any material fact" and the "moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P.

For purposes of ruling on the defendants' motions for summary judgment, the court will include in its consideration the following facts which appear to be undisputed or established as a matter of law.

The Metropolitan Transit Commission (MTC) submitted a grant application to the Urban Mass Transportation Administration (UMTA) in March of 1974, Project No. MN–03–0012, requesting financial assistance for the purchase of, among other things, 309 standard-size transit buses that were not specially equipped to transport persons confined to wheelchairs and 10 vans specifically equipped to transport passengers confined to wheelchairs. On April 23, 1974, MTC held a public hearing concerning the above grant application to allow interested persons to present their views on the economic, social, and environmental effects of the project. The hearing was preceded by publication of legal notice in newspapers of general circulation in the geographic area served by MTC describing the project as including the purchase of up to 309 standard-size transit buses and 10 vans equipped to transport the wheelchair handicapped and providing information on the total cost of the project and the estimated Federal grant. The above notice was published two times in each of the following newspapers: Minneapolis Star and Tribune, St. Paul Pioneer Press and Dispatch, Finance and Commerce, St. Paul Legal Ledger, and Twin Cities Courier. None of the plaintiffs nor anyone representing their interests appeared at the public hearing.

On or about June 12, 1974, Frank Herringer, then Administrator of UMTA, approved the purchase of 179 standard-size transit buses and 10 vans specially equipped for the wheelchair handicapped. Defendant Petricelli approved an amendment to Project No. MN–03–0012 on August 26, 1975, increasing authorized acquisition of standard-size transit buses to 309.

UMTA has under consideration an amendment to Project No. MN–03–0012 that would provide Federal assistance to MTC for the purchase of approximately 20 articulated transit buses and Project No. MN–23–0001 which would provide Federal assistance to MTC for the purchase of 29 standard-size transit buses and four small buses that are specially equipped to transport the wheelchair handicapped. A public hearing was held on the capital grant application for the 29 standard-size buses and the four small buses on October 22, 1975, and was preceded by appropriate legal notice.

UMTA has, in accordance with the mandate of Congress pursuant to the Urban Mass Transportation (UMT) Act of 1964, as amended, 49 U.S.C. § 1601 *et seq.,* carried on extensive research, planning, and design of mass transportation services and facilities to provide for effective utilization of mass transportation by the elderly and physically handicapped. Included in these efforts are the ongoing research and development of facilities and services, approval of grants for the purchase of vans and small buses equipped to meet the needs of the elderly and handicapped, development of the "TRANSBUS," publication of Notice of Rulemaking, and a requirement in grant approvals that the elderly and handicapped be charged reduced rates during non-peak hours.

Although UMTA is working on the development of the accessible "TRANS-

BUS," no bus manufacturer in the United States presently produces a standard-size transit bus that is specially designed for total accessibility by the wheelchair handicapped with features providing safety for the handicapped and all other passengers. Although the 338 buses presently being manufactured for MTC pursuant to a contract between MTC and AM General are not specially equipped for the wheelchair handicapped, they do include the following special provisions which aid the elderly and handicapped: non-skid floors; special grab-rails; improved lighting; safety rear door; and improved destination signs.

None of the funds appropriated by Congress pursuant to the Department of Transportation and Related Agencies Appropriations Act of 1975, Pub.L. No. 93–391, 88 Stat. 781 (August 28, 1974), will be used to provide assistance to MTC for Project No. MN–03–0012 or, if approved, Project No. MN–23–0001 or the amendment to Project No. MN–03–0012.

### 1. *Federal Statutes*

■ Plaintiffs rely strongly on § 16 of the UMT Act of 1964, 49 U.S.C. § 1612, to provide support for the claim that acquisition of buses by MTC, with financial assistance from UMTA, that are not equipped to transport passengers confined to wheelchairs violates the statute and the rights of plaintiffs. Section 1612(a) provides as follows:

*It is hereby declared to be the national policy* that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provi-

sions implementing this policy. [emphasis added]

The court finds that UMTA has made and is making "special efforts" to aid the elderly and handicapped in utilizing mass transportation systems. As a part of that effort, 10 small buses that are equipped to safely transport wheelchair handicapped have been approved under Project No. MN–03–0012 for MTC. In addition, the 338 buses that are presently being manufactured for MTC include specifications designed to improve the utilization of these vehicles by the elderly and handicapped. The court is not persuaded that the statute requires that every standard-size transit bus be specially equipped to transport the wheelchair handicapped. *Snowden v. Birmingham-Jefferson County Transit Authority,* 407 F.Supp. 394 (N.D.Ala., 1975); *Webb v. Miami Valley Regional Transit Authority* (S.D.Ohio, Jan. 19, 1976). It would seem unreasonable to interpret the statute as requiring total accessibility since no bus manufacturer in the United States presently manufactures a standard-size transit bus specially equipped to transport, with safety, those confined to wheelchairs.

■ In addition to § 16 of the UMT Act, the plaintiffs also rely on similar language in § 105 of the Federal-Aid Highway Amendments of 1974, Pub.L. No. 93–643, 88 Stat. 2282, (January 4, 1975). This section is applicable only to projects funded under Title 23 of the United States Code. Section 105 sets forth a statement of policy concerning the granting of Federal assistance but does not require every standard-size transit bus to be totally accessible to every mobility handicapped person.

■ The next Federal statute relied on by plaintiffs is § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. This section provides as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(c) of this title, shall, solely by reason of his handicap, be excluded from participation in, be

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

This statutory language, like § 16 of the UMT Act, sets forth a statement of Congressional policy. *Snowden v. Birmingham-Jefferson County Transit Authority, supra.* The court is not persuaded that this laudable statement of Congressional policy requires that all regular route standard-size transit buses be totally accessible to those whose physical disabilities confine them to wheelchairs or that failure to do so is an act of discrimination in violation of the statute. *Id.* In this case, as in *Snowden,* the defendant transit authority does not exclude the wheelchair handicapped from riding the transit buses if they can arrange for someone to assist them in boarding and exiting the bus. The defendants are not in violation of the Rehabilitation Act of 1973.

■ Plaintiffs' complaint alleges that defendants may have violated or may in the future violate plaintiffs' rights under § 315 of the Department of Transportation and Related Agencies Appropriations Act of 1975, Pub.L. No. 93–391, 88 Stat. 781 (August 28, 1974). The uncontroverted affidavit of UMTA Administrator Petricelli establishes that none of the appropriations of that Act will be used to provide assistance to MTC for Project No. MN–03–0012 or, if approved, Project No. MN–23–0001 and the amendment to Project No. MN–03–0012. Therefore the language of Section 315 need not be considered by the court for the purpose of these motions.

■ Section 3(d) of the UMT Act, 49 U.S.C. § 1602(d), requires an applicant for Federal assistance, such as MTC, to certify, among other things, that there has been "adequate opportunity for public hearings pursuant to adequate prior notice . . . ." Plaintiffs argue that defendants have not fulfilled this obligation. The court finds as a matter of law that the grant applications requesting Federal assistance for the purchase of 338 standard-size transit buses have been the subject of appropriate notice and opportunity for hearing as required by 49 U.S.C. § 1602(d).

■ In the remaining Federal statutory claims, plaintiffs allege that the Civil Rights Act of 1871, specifically 42 U.S.C. §§ 1983 and 1985, provides a vehicle to seek relief for the alleged deprivation of rights and privileges caused by defendants' violations of the Federal Statutes previously listed as separate causes of action. Since the court has ruled as a matter of law that summary judgment is appropriate as to the previous causes of action relating to the Federal statutes, the pleading of civil rights claims based on rights and privileges alleged to arise from the same statutes also fail as a matter of law. *Cf. Kaznoski v. Consolidation Coal Co.,* 368 F.Supp. 1022, 1024 (W.D.Penn.), *aff'd* 506 F.2d 1051 (3d Cir. 1974). Further, there is serious question whether MTC is a "person" under the Civil Rights Act. *See Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Minn.Stat.* § 473A.05.

## 2. *Constitutional Claims*

■ The plaintiffs have alleged causes of action based on a denial of equal protection and a denial of their right to travel. The plaintiffs argue that the defendants have created a "suspect classification" of wheelchair handicapped persons who are not able to effectively use MTC buses. Plaintiffs further argue that the defendants have denied them their fundamental right to travel by not providing transit buses equipped to transport the wheelchair handicapped. It appears to be plaintiffs' theory that the creation of this "suspect class" and the denial of the fundamental Constitutional right to travel gives rise to invidious discrimination and that the legal justification for such discrimination must be based on a "compelling state interest" rather than on a mere rational basis. *See Shapiro v. Thompson,* 394 U.S. 618, 638, 89 S.Ct. 1322, 1333, 22 L.Ed.2d 600, 617 (1969).

The court declines to rule that the defendants have created a "suspect class"

**1302**

or that travel by intrastate MTC bus involves a "fundamental right." *Snowden v. Birmingham-Jefferson County Transit Authority, supra.* Therefore, if discrimination does exist, the traditional equal protection test is applicable and defendants easily meet that test. The court, however, is not persuaded that these. plaintiffs are being subjected to invidious discrimination under color of State law. The alleged violations of Constitutional rights are not based on allegations that defendants prohibit plaintiffs from riding MTC vehicles, but rather that defendants have failed to specifically equip the buses to transport the wheelchair handicapped. The court is not convinced that the Constitution, absent a statutory mandate, places an affirmative duty on the defendants to provide special facilities for a special class of people. *Id.* The court agrees with and adopts the statement of the *Snowden* decision in which that court stated:

> The facts of this case do not appear to involve any invidious discrimination against similarly situated persons. Such discrimination as may in fact exist results from technological and operational difficulties in designing, producing and operating the kind of special vehicles needed to allow plaintiff and the class she represents to utilize BJCTA's bus system with safety and

convenience for themselves and other passengers. The affidavits . . . show that there is no device presently developed and proven reliable for use in a standard full-size urban transit bus which would make that bus fully accessible to plaintiff and her class. As the Supreme Court noted in *Yakus v. United States,* 'The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable.' 321 U.S. 414, 424, 64 S.Ct. 660, 667, 88 L.Ed. 834, 848 (1944).

*Id.* at 398.

3. *State Statute and State Regulations*

■ The plaintiffs have alleged violations of *Minn.Stat.* § 256C.02 and Article IX, Section 5 of the MTC Administrative Regulations. Plaintiffs contend that the alleged violations of rights secured by State law are interrelated with the alleged violations of Federal law and that jurisdiction over these claims should be exercised by the court on the theory of pendent jurisdiction. Since the court has granted summary judgment for the defendants on all of the Federal claims, the Court declines to exercise jurisdiction over the State law claims and thereby dismisses them for lack of subject matter jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228 (1966).