MICHIGAN PARALYZED VETERANS OF AMERICA, a Michigan non-profit Corporation, et al., Plaintiffs,

v.

William COLEMAN, Jr., Secretary of Transportation, et al., Defendants.

Civ. No. 5–71114.

United States District Court,
E. D. Michigan, S. D.

Nov. 3, 1977.

Sheldon Wachler, Southfield, Mich., and Barry C. Brown, East Lansing, Mich., for plaintiffs.

James K. Robinson, U. S. Atty., and Thomas Woods, Asst. U. S. Atty., Detroit,

Mich., for the federal defendants Secretary of Transportation, Urban Mass Transportation Administrator, and General Services Administrator.

Frank J. Kelley, Atty. Gen. of Michigan, Lansing, Mich., and Robert L. Krause, Asst. Atty. Gen., Detroit, Mich., for defendant Director of Michigan Department of Highways and Transportation.

Walter H. Clements, and Dickinson, Wright, McKean, Cudlip & Moon, Detroit, Mich., for defendants Chairman and General Manager, Southeastern Michigan Transit Authority.

W. Mack Faison, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendants Conrad Mallett and Michael Glusak, Southeast Michigan Congress of Governments.

Roger E. Craig, Corp. Counsel, and William Dietrich, Asst. Corp. Counsel, Detroit, Mich., for defendant Mayor Coleman Young of the City of Detroit, Michigan.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND ALLOWING PLAINTIFFS TO AMEND THEIR COMPLAINT

KEITH, Chief Judge.

The federal defendants have moved, in a motion joined in by the state and municipal defendants, to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, or, in the alternative, for summary judgment pursuant to Rule 56 on the ground that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. Briefs, supplemental briefs, affidavits and exhibits were filed in support of and in opposition to this motion. The matter came on for a hearing on October 26, 1976. At the conclusion of the hearing, the Court announced it would deny the motion to dismiss, and take under advisement the motion for summary judgment. Additional information regarding the issues raised by this action and the motion under considera-

tion were brought to the Court's attention by each party after the hearing had been held and while the summary judgment motion was under advisement. The Court received a supplemental memorandum from the plaintiffs on April 19, 1977, and copies of the amendments to the Urban Mass Transportation Administration regulations from the federal defendants on September 27, 1977. The Court is now fully advised in the premises.

This action was brought by and on behalf of elderly and handicapped persons seeking injunctive and declaratory relief to prevent the Southeastern Michigan Transportation Authority (SEMTA) from planning, approving, issuing money for, contracting for, or fulfilling existing contracts for, the purchase of any diesel transit buses, other public transportation vehicles or related facilities which are inaccessible to mobility handicapped persons where said purchases are to be funded in whole or in part by the United States Department of Transportation, unless and until the defendants comply with those federal and state laws and agency regulations designed to protect the rights of the mobility handicapped to public transportation facilities. Complaint at 1–2. On June 19, 1975, the Court denied plaintiffs' request for a temporary restraining order to halt SEMTA's procurement of buses with funds derived from Urban Mass Transportation Capital Improvement Grant No. MI–03–0030. The defendants subsequently filed their motion to dismiss or for summary judgment.

The Complaint alleges seven causes of action. Plaintiffs assert that the defendants have violated: 1) section 16(a) of the Urban Mass Transportation Act, 84 Stat. 962, 49 U.S.C. § 1612(a) (1970); 2) section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 3) Public Law 90–480, 42 U.S.C. §§ 4151 et seq.; 4) the Federal Aid Highway Amendments of 1974, 88 Stat. 2283, Public Law 93–643; 5) the Department of Transportation and Related Agencies Appropriations Act of 1975, 88 Stat. 768, Public Law 93–391; 6) Act 327 of Michigan Public Acts of 1972, M.S.A.

§ 9.1097(10c), M.C.L.A. § 247.660b; and 7) the due process and equal protection clauses of the United States and Michigan Constitutions. In *Lloyd v. Regional Transportation Authority,* 548 F.2d 1277 (7th Cir. 1977), a case decided subsequent to the hearing on defendants' motion to dismiss or for summary judgment, the Court held that section 504 of the Rehabilitation Act of 1973 does confer upon private parties a cause of action to compel compliance by government authorities with the Urban Mass Transportation Act and the regulations promulgated thereunder, 548 F.2d at 1284–1287, and that doctrines of primary jurisdiction and prior administrative agency review do not bar consideration of such claims by a federal district court. 548 F.2d at 1287. *See Lau v. Nichols,* 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974) (opinion construing section 601 of the Civil Rights Act of 1964, an analogous predecessor statute to section 504 of the Rehabilitation Act of 1973, as providing a private cause of action); *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) (opinion setting out the four factors relevant to a determination of whether a private remedy is implicit in a statute which does not specifically provide for one). Thus, defendants' motion to dismiss this action was properly denied by this Court.[1]

1. In holding that this action should not be dismissed for failure to state a claim upon which relief can be granted, the Court finds that the action is properly brought pursuant to section 16(a) of the Urban Mass Transportation Act, 49 U.S.C. §§ 1612(a), 49 U.S.C.A. § 1612(a) (1976), and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 29 U.S.C.A. § 794 (1975). 49 U.S.C.A. § 1612(a) reads as follows:

(a) It is hereby declared to be the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special effort shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.

"Handicapped person" is defined in 49 U.S.C. § 1612(d) as follows:

(d) for purposes of this chapter, the term "handicapped person" means any individual who, by reason of illness, injury, age, congenital malfunction, or other permanent or temporary incapacity or disability, is unable without special facilities or special planning or design to utilize mass transportation facilities and services as effectively as persons who are not so affected.

29 U.S.C.A. § 794 provides as follows:

No otherwise qualified handicapped individual in the United States, as defined in section 706(6) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

However, the plaintiffs have failed to state a cause of action against the Administrator of the General Services Administration, a named defendant herein. Complaint at 6, 17. The General Services Administrator is required by 42 U.S.C.A. § 4152 (1977), to prescribe, after consultation with the Secretary of Health, Education and Welfare, standards for the design, construction, and alteration of buildings, to insure whenever possible that physically handicapped persons will have ready access to, and use of, such buildings. The term "building" is defined in 42 U.S.C.A. § 4151 as follows:

§ 4151. Definitions.

As used in this chapter, the term "building" means any building or facility (other than (A) a privately owned residential structure not leased by the Government for subsidized housing programs and (B) any building or facility on a military installation designed and constructed primarily for use by able bodied military personnel) the intended use for which either will require that such building or facility be accessible to the public, or may result in the employment or residence therein of physically handicapped persons, which building or facility is—

(1) to be constructed or altered by or on behalf of the United States;

(2) to be leased in whole or in part by the United States after August 12, 1968;

(3) to be financed in whole or in part by a grant or a loan made by the United States after August 12, 1968, if such building or facility is subject to standards for design, construction, or alteration issued under authority of the law authorizing such grant or loan; or

(4) to be constructed under authority of the National Capital Transportation Act of 1960, the National Capital Transportation Act of 1965, or title III of the Washington Metropolitan Area Transit Regulation Compact.

The plaintiffs claim that the term "facility" defined above includes "vehicular facilities"

In support of their alternative motion for summary judgment the defendants contend that neither section 16(a) of the UMT Act nor section 504 of the Rehabilitation Act of 1973 require every transit bus purchased by a local transit authority in whole or in part with federal funds to be fully accessible to the mobility handicapped. Instead, they assert, these acts only require them to make "special efforts" to assure the effective utilization by the elderly and the handicapped to mass transportation facilities (section 16(a)), and that no otherwise qualified handicapped individual be denied, solely because of his handicap, the benefits of, or be subjected to discrimination under, any program or activity receiving federal assistance (section 504). The plaintiffs respond by asserting that buses which are accessible to the mobility handicapped (called Transbus) do exist, and are available for purchase by SEMTA with UMTA funds. Pls'. Exhibit B attached to their Reply to Defs'. Supp.Memo. They assert that SEMTA's failure to purchase such buses is a failure to make the special efforts required by section 16(a), and the plaintiffs are therefore being discriminated against in federally funded public transportation programs in violation of section 504.

In *United Handicapped Federation v. Andre,* 409 F.Supp. 1297 (D.Minn.1976), *vacated and remanded,* 558 F.2d 413 (8th Cir. 1977), and *Snowden v. Birmingham-Jefferson County Transit Authority,* 407 F.Supp. 394 (N.D.Ala.1975), *affirmed,* 551 F.2d 862 (5th Cir. 1977), cases relied upon the federal defendants in their supplemental brief, the district courts found that the state of the art in transit bus technology was such that the defendants therein could not be required to purchase buses which were completely accessible to mobility handicapped persons. In *Andre* the court noted:

> It would seem unreasonable to interpret the statute [section 16(a)] as requiring total accessibility since no bus manufacturer in the United States presently manufactures a standard-size transit bus especially equipped to transport, with safety, those confined to wheelchairs.

409 F.Supp. at 1300. And in *Snowden,* the court stated:

> Special efforts have been made by BJCTA by the installation of special equipment and features such as stanchions, grab-rails, step-well lighting, power-assisted doors, etc. to aid handicapped persons other than those confined to wheelchairs in boarding and alighting from its buses. Modern technology has not progressed to the point of doing any more for those persons confined to a wheelchair than is already being done by BJCTA. In view of the present state of available bus technology, as above described, it would seem inherently unreasonable to bring all new bus procurement to a halt while new equipment is being designed, developed, tested and produced. Such a course of action would harm the general public without in any way aiding plaintiff and the class she represents.

407 F.Supp. at 397. But since these cases were decided, at least one municipal transportation authority, the Southern California Rapid Transit District, did receive bids from three bus manufacturers in the United

---

such as transit coaches or buses, Complaint at 17, and that the GSA Administrator has failed to effectively promulgate guidelines required by 42 U.S.C. § 4152 with respect to federally funded mass transit vehicles. Complaint at 17. This is a rather tortured interpretation of the statute. It finds no support in the language of the statute, in its legislative history, 1968 *U.S. Code Cong. & Admin.News* pp. 3215–3217, 90th Cong., 2nd Sess., S.Rep.No. 538, or in the regulations of the General Services Administration interpreting this statute, 41 CFR §§ 101–19.000 *et seq.* Regulations and standards concerning the accessibility of buses to mobility handicapped persons are within the purview of

the Urban Mass Transportation Administration and the Federal Highway Administration of the Department of Transportation. 41 Fed.Reg. 18224–18421 (1976), 49 CFR §§ 609 *et seq.* (1976). Therefore, the Court is of the opinion that this action may be dismissed as to the General Services Administrator since the third cause of action in the Complaint does not state a cause of action.

Because of the Court's decision with regard to plaintiffs' first two causes of action, the Court will not here consider the issues presented by the plaintiffs' fourth, fifth, sixth and seventh causes of action.

States for buses which had wheelchair accessible options. Pls'. Exhibit B attached to their Reply to Defs'. Supp.Memo. Also, on May 19, 1977, Secretary of Transportation Brock Adams announced at a press conference on Transbus that the Department of Transportation was going to require all new buses purchased with DOT grants to be designed for easy access by elderly and handicapped persons. He acknowledged that there was some opposition to the Transbus concept on the ground that it was not within the capacity of the industry to produce a low-floor, ramped bus which could operate safely and efficiently in day-to-day transit service. *Statement* of Secretary Adams, Press Conference on Transbus, May 19, 1977, at 2. But he supported the Transbus idea:

> A review of the record convinces me that, at a minimum the three major domestic bus manufacturers could begin Transbus deliveries within 3½ years. This date allows almost 2½ years for development before bidding would begin, and approximately 15 months thereafter before the buses are actually delivered.

*Ibid.* at 2. *See* 123 Cong.Rec. S–10556—S–10567 (June 23, 1977). Thus, the technology which did not exist when *Andre, supra,* and *Snowden, supra,* were decided in the district courts now exists. The question remains whether the defendants are required by the Urban Mass Transportation Act or the regulations promulgated thereunder to order such buses immediately.

In addition, the Urban Mass Transportation Administration has amended its regulations regarding the transportation of elderly and handicapped persons to conform to the aforementioned decision of the Secretary of Transportation. These amendments provide that as of September 9, 1977, the effective date of the amendments,[2] all procurement solicitations made on or before September 30, 1979, by UMTA grantees for new, standard, full-size buses must provide for a bus design which permits the addition of a wheelchair accessible option for each bus, and the bidder must provide assurances that it offers wheelchair accessibility options for its buses.[3] All procurement solicitations by UMTA grantees containing UMTA approved specifications issued after September 30, 1979, for new, standard, full-size urban transit buses must utilize the Transbus Procurement Requirements of UMTA's bid package.[4]

It remains for the Court to consider the effect of these amendments to 49 CFR § 609.15 (1976) on this action. The Court must review the sufficiency of these regulations in light of section 16 of the Urban Mass Transportation Act, taking into account the discretion conferred by this Act upon the Secretary of Transportation to implement the Congressional policy. Should these regulations be sustained as being neither arbitrary, capricious, or an abuse of discretion, the question is presented whether SEMTA is in fact soliciting bids on buses which do permit the addition of the wheelchair accessibility option.

For the foregoing reasons, the Court is of the opinion that defendants' motion for summary judgment is premature and must be denied without prejudice.

The Court will allow the plaintiffs to amend their complaint to add or delete causes of action in conformity with this opinion and in light of developments in the law since this motion was argued.

IT IS SO ORDERED.

---

2. 42 Fed.Reg. 48339 (1977).

3. 42 Fed.Reg. 48340 (1977). "The term 'wheelchair accessibility option' means a level change mechanism (e. g. lift or ramp), sufficient clearances to permit a wheelchair user to reach a securement location, and at least one wheelchair securement device." *Ibid.*

4. 42 Fed.Reg. 48340 (1977). "The technical specifications section of that package [Transbus Procurement Requirements] require a stationary floor height of not more than 22 inches, an effective floor height including a kneeling feature of not more than 18 inches, and a ramp for boarding and exiting." *Ibid.*