GREGG B., by his father, Melvin B., and
Melvin B., Individually, Plaintiffs,

v.

BOARD OF EDUCATION OF the LAW-
RENCE SCHOOL DISTRICT,
Defendant.

No. 81 C 1152.

United States District Court,
E. D. New York.

April 9, 1982.

Dalton, Henoch & Kadin, Hempstead, N. Y. (Jack I. Slepian, Hempstead, of counsel), for plaintiffs.

Winick, Ginsberg, Ehrlich, Reich & Hoffman, Garden City, N. Y. (Lawrence W. Reich, Garden City, N. Y., of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

This action was brought to obtain from defendant Board of Education of the Lawrence School District (the School Board) reimbursement for the tuition plaintiff Melvin B. has paid since September 1979 to the Mill Creek School for the education of his son, plaintiff Gregg B., and to require payment for his continued attendance until age 21 at that school and payment of attorneys' fees. Plaintiffs allege that the School Board denied Gregg a free appropriate education in violation of the Education for All Handicapped Children Act of 1975 (the Education for Handicapped Act), 20 U.S.C. § 1401 et seq., and section 504 of the Rehabilitation Act of 1973 (the Rehabilitation Act), 29 U.S.C. § 794.

The School Board has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, for judgment on the pleadings pursuant to Rule 12(c), and for an order dismissing the complaint pursuant to Rule 12(b)(1) and (6). The School Board contends that (1) this court lacks jurisdiction because plaintiffs have not exhausted their administrative remedies, (2) plaintiffs have waived any claim for tuition reimbursement, (3) neither the Education for Handicapped Act nor the Rehabilitation Act creates a claim for damages or attorneys fees, and (4) the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988, does not authorize an award of fees in this case.

### I

Gregg B., born on November 13, 1960, is emotionally handicapped. He has been hospitalized and treated for character disorder in several mental health facilities. He attended the Lawrence public schools from kindergarten until grade eleven, when his condition deteriorated so that he could no longer reside at home or attend public school.

On February 8, 1979 he was admitted to the Pennsylvania Hospital in Philadelphia, suffering from schizophrenic reaction, acute paranoid type. In April 1979, without the knowledge of the School Board, his parents placed him in the Mill Creek School, associated with the Institute of the Pennsylvania Hospital. So far as the record shows he received no schooling in 1978–79 prior to that date.

On June 19, 1979 his parents met with the Committee on the Handicapped (the Committee) of the Lawrence public schools and requested financial support for his attendance at Mill Creek School during the summer and for the academic year 1979–80. The Committee deferred a decision pending receipt of a recommendation of a scholastic placement from the hospital psychiatrist.

On June 27, 1979 the Committee met again with Gregg's parents. A report from the hospital psychiatrist reiterated the February diagnosis and recommended that Gregg continue at Mill Creek School. The minutes of this meeting state that Edwin Kuffner, Chairman of the Committee and Director of Pupil Personnel Services for the Lawrence Public Schools,

explained to the parents that the District will fund only the educational component [at Mill Creek School], not medical expenses. Funding is on a ten month basis. District will support petition to Family Court for summer program but District

support is only as a facilitator of forms. Next year it will be necessary to return for review with an update of diagnostic information.

The minutes further show that the Committee, referring to Mill Creek School, recommended that the School Board "[a]pprove educational component for the 1979–1980 school year."

On August 3, 1979 Mrs. C. Freamon of the School's Office of Pupil Personnel Services sent the parents a copy of a letter dated July 18, 1979 from the New York State Education Department denying approval of the petition to the Family Court required by state law for funding during the summer of 1979. The letter stated that state aid was not approved for Gregg's education from June 25 to August 31, 1979 at the Mill Creek School because the school "has not been approved by the State Education Department to provide the special education program requested for the child." The letter made no reference to public support or the denial thereof for the ensuing academic year. On August 17, 1979 the School's psychologist sent the parents a copy of the minutes of the June 27 meeting that included the recommendation to "[a]pprove educational component for the 1979–1980 school year."

Gregg's parents reenrolled him for 1979–80 at Mill Creek School, where he has remained ever since. They received no further written communication from the Committee or the Office of Pupil Personnel Services during that year. In his affidavit Kuffner asserts that within a month of the June 27, 1979 meeting he told Gregg's parents that the School District could not fund Gregg's education for 1979–80 at Mill Creek School because it lacked state approval. Kuffner further says that the parents told him that they wished to keep Gregg in that school even without reimbursement and declined Kuffner's offer to reconvene the Committee for the purpose of locating a different placement. Gregg's parents deny these statements.

On August 26, 1980 Kuffner wrote Gilbert Henoch, plaintiff's attorney, that the Committee "did not recommend placement of Gregg ... in the Institute of the Pennsylvania Hospital" because the school did not have state approval. Kuffner did not offer to find another appropriate school but asked the lawyer to call him with any questions. On November 6, 1980 Kuffner informed the Committee of the correspondence with the lawyer. The parents were not present. The recommendation of the Committee was to "close case."

## II

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, prohibits discrimination against any "otherwise qualified handicapped individual" in programs receiving federal financial aid. Regulations promulgated under this act require public elementary or secondary schools receiving federal funds to "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 45 C.F.R. § 84.33(a).

In this circuit one whose rights under section 504 have been violated has a private claim. *See, e.g., Leary v. Crapsey*, 566 F.2d 863 (2d Cir. 1977); *Kampmeier v. Nyquist*, 553 F.2d 296 (2d Cir. 1977). Moreover, Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a, added by Congress in 1978, makes available to aggrieved persons the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" and authorizes a court to award a reasonable attorney's fee in any action to enforce a violation of Section 504.

The Education for Handicapped Act provides federal grants to states. A state wishing to qualify for federal funds must demonstrate that it "has in effect a policy that assures all handicapped children the right to a free appropriate public school education." 20 U.S.C. § 1412(1). The state must devise a plan that ensures, among other things, that local educational agencies determine which children are handicapped and develop and annually revise an "individualized educational program" for each such child. 20 U.S.C. §§ 1401(19), 1412(4), 1414(a)(5).

In New York every board of education must establish a committee on the handicapped to carry out these responsibilities and to recommend to the parent and the board an appropriate educational placement for each handicapped child. N.Y.Educ.Law (McKinney) § 4402.1–b. Based on this recommendation the board of education must then furnish a "suitable" educational opportunity from among various alternative placements including private schools approved by the New York State Commissioner of Education (the Commissioner) for placement of children with particular handicaps. *Id.* §§ 4402.2, 4401.2. However, if the school board determines that there is no appropriate program within New York, it must notify the Commissioner, who alone is authorized to enter into contracts with out-of-state schools. *Dubner v. Ambach*, 74 App.Div.2d 949, 426 N.Y.S.2d 164 (1980), *aff'd*, 52 N.Y.2d 910, 437 N.Y.S.2d 659, 419 N.E.2d 337 (1981); N.Y.Educ.Law (McKinney) §§ 4402.2(b)(3), 4407.1; 8 NYCRR 200–1.8(c).

Section 615 of the Education for Handicapped Act, 20 U.S.C. § 1415, also requires states to establish procedures to permit parents to challenge the evaluation and placement of a child. These procedures must include written prior notice whenever the state or local educational agency initiates or changes or refuses to initiate or change the child's educational placement and an impartial due process hearing at which the parents may present complaints as to these matters. A parent aggrieved by the decision must have the right to appeal to the state educational agency if that agency did not itself conduct the hearing. A parent still aggrieved may bring a civil action in a federal district court. A written notice must inform parents of these procedures.

In compliance with section 615 of the Education for Handicapped Act, New York requires the Committee to furnish the parents with its placement recommendation to the school board as well as "a written evaluation setting forth the reasons for the recommendation." N.Y.Educ.Law (McKinney) § 4402.1–b(3)(b). The notice from the Committee must inform the parents that they have a right to a hearing if they disagree with the recommendation. 8 NYCRR 200–1.5(b). The school board, which selects the child's program, must provide the parents with "written notice of its determination." N.Y.Educ.Law (McKinney) § 4402.2–b(2). If the school board does not follow the recommendation of the Committee, the notice must state why.

If the parents disagree with the recommendation of the Committee or if it fails to make one, the parents may request the school board to appoint an impartial hearing officer to make a recommendation. *Id.* § 4404.1. The school board will then select a program for the child, and the parents may appeal the board's decision to the Commissioner. *Id.* If the parents and the Committee agree but the board of education does not, the parents may request an impartial hearing. *Smith v. Ambach*, No. 80 C 1086E, Slip op. at 7–8 (W.D.N.Y. Aug. 21, 1981); 8 NYCRR 200–1.5(c).

These procedures are not available for review of a determination by the Commissioner or the State Education Department that affects the placement of handicapped children, for example, the refusal to contract with an out-of-state school. *In the Matter of the Board of Education of New York*, 19 Ed. Dep't Rep. 1 (1979). The Commissioner's decision may be reviewed in an Article 78 proceeding brought in state supreme court. N.Y.Educ.Law (McKinney) § 4404.3; N.Y.C.P.L.R. (McKinney) § 7801.

### III

██ The School Board seeks summary judgment or dismissal on the ground that plaintiffs have not exhausted the administrative appeals available under New York law. Plaintiffs reply that there was no adverse decision for them to appeal because on June 27, 1979 the Committee recommended placing Gregg at Mill Creek School.

Section 615(e)(2) of the Education for Handicapped Act, 20 U.S.C. § 1415(e)(2), authorizes an action in a federal district court by a party aggrieved by the decision of the hearing officer or the state education

department in states where appeal to that department is available. The Court of Appeals for the Second Circuit has interpreted this section to permit an action only after the plaintiff has pursued the administrative remedies provided for in the act, unless recourse to them would be futile. *See, e.g., Riley v. Ambach,* 668 F.2d 635 (2d Cir. 1981). The same exhaustion requirements have been applied to actions claiming violations of section 504 of the Rehabilitation Act and 42 U.S.C. § 1983, although those sections do not contain the same procedural provisions as does the Education for Handicapped Act. *See Jose P. v. Ambach,* 669 F.2d 865 *et al.* (2d Cir. 1982) (§ 1983); *Riley v. Ambach, supra* (by implication § 504); *Smith v. Ambach, supra* (§ 504); *Lombardi v. Ambach,* 522 F.Supp. 867 (E.D.N.Y.1981) (§ 1983 and § 504).

Exhaustion of administrative remedies serves two important ends. *Riley v. Ambach, supra,* at 639–40. First, the administrative record developed by persons with educational expertise may illuminate the technical questions as to the educational services appropriate for a child. Second, the administrative process may resolve some disputes and thereby forestall lengthy and costly trials.

However, as noted, a plaintiff need not exhaust remedies from which no relief may be had. Thus, plaintiffs have not been required to pursue administrative procedures where the issues are not technical and the administrative process has proven slow and ineffective, *Jose P. v. Ambach, supra,* where plaintiffs seek interim relief and the effect of requiring exhaustion would be to deny such relief, *Vander Malle v. Ambach,* 673 F.2d 49 (2d Cir. 1982), or where there is no possibility of a favorable administrative decision, *id. citing Armstrong v. Kline,* 476 F.Supp. 583, 601–02 (E.D.Pa.1979), *remanded on other grounds sub nom. Battle v. Pennsylvania,* 629 F.2d 269 (3d Cir. 1980), *cert. denied,* 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 781 (1981). .

On August 26, 1980 the Chairman of the Committee, Kuffner, notified the parents' attorney that the Committee could not rec-ommend Gregg's placement at Mill Creek School because it did not have state approval. It is true the Committee should have recommended an alternative placement once it discovered that Mill Creek School was unapproved, *Lombardi v. Ambach, supra,* 522 F.Supp. at 871; *In the Matter of a Handicapped Child,* 18 Ed. Dep't Rep. 543 (1979), and Kuffner did not offer to reconvene the Committee for that purpose. It is also true that the letter did not advise that the parents could request a due process hearing, although both federal and state law require that the parents be so notified. 20 U.S.C. § 1415(b)(1)(D); 8 NYCRR 200–1.5(b).

However, the letter which Kuffner sent to the parents' attorney was sufficient compliance with the requirement that they be informed of the state administrative remedies. Once the parents knew that the recommendation of the Committee was "not acceptable" or that "the committee fail[ed] to make a recommendation," they could have asked the school board to appoint an impartial hearing officer. N.Y.Educ.Law (McKinney) § 4404.1.

Had they sought a hearing the inquiry into the education required by Gregg might have resulted in another placement for 1980–81. If no other school could have been located or if the parents had insisted that only Mill Creek School was appropriate, the issue of whether the refusal to approve it deprived Gregg of his rights would be illuminated by the administrative record.

The court holds that plaintiffs, since they did not pursue their administrative remedies for the 1980–81 year, may not claim reimbursement for that year and, of course, may not have prospective relief.

■■■■ With respect to the school year 1979–80 the situation is different. If the affidavits for plaintiffs are believed, the parents had no administrative remedy for the failure of the School Board to place Gregg in an approved school for that school year. Admittedly they received nothing in writing that Gregg's education at Mill Creek School could not be funded by the

School Board for that year. The parties disagree as to whether the parents received verbal notification in 1979. If they did not the only practical remedy is reimbursement of the tuition at Mill Creek School for 1979–80. They could not obtain such reimbursement by means of their administrative remedies. Under New York law a school board may not reimburse tuition at an unapproved school, even if the Commissioner has determined that the parents incurred the expense because of the school board's inexcusable delay. *E.g., In the Matter of Anne B.*, 18 Ed. Dep't Rep. 4 (1978). Moreover, a hearing officer has no authority under New York law to review the refusal of the Commissioner to approve a school. Nor can that determination be appealed to the Commissioner himself. N.Y.Educ.Law (McKinney) § 4404; *In the Matter of the Board of Education of New York*, 19 Ed. Dep't Rep. 1 (1979).

Therefore, if plaintiffs' version of the facts is correct, the failure to give plaintiffs timely notice rendered the administrative remedies ineffective. *Cf. Ruth Anne M., et al. v. Alvin Independent School District*, 532 F.Supp. 460 (S.D.Tex., 1982) (exhaustion waived when parents did not know about administrative procedures).

### IV

Since there is a dispute as to whether the parents knew the school board lacked authority under state law to pay for Gregg's education at Mill Creek School when they reenrolled him in the fall of 1979, the court on this record cannot say they waived his right to be educated at public expense for 1979–80.

### V

■ Defendant further contends that the claim for tuition reimbursement for 1979–80 should be dismissed because damages are not available under section 615(e)(2) of the Education for Handicapped Act, 20 U.S.C. § 1415(e)(2), or section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

### A

Most cases that have considered the matter have decided that while no general damage remedy can be implied from the Education for Handicapped Act, reimbursement of tuition under that act may on occasion be justified. *E.g., Miener v. Missouri*, 673 F.2d 969 (8th Cir. 1982). This has been allowed, for example, where child's health is endangered, *Tatro v. Texas*, 516 F.Supp. 968, 978 (N.D.Texas 1981), or where defendant has acted in bad faith, *Ruth Anne, et al. v. Alvin Independent School District, supra,* or where defendant fails to comply with procedural requirements, *Monahan v. Nebraska*, 491 F.Supp. 1074, 1094 (D.Neb.1980), *aff'd in part, vacated in part*, 645 F.2d 592 (8th Cir. 1981).

According to *Anderson v. Thompson*, 658 F.2d 1205, 1213–14 (7th Cir. 1981), Congress intended that parents should have the right unilaterally to place their child in a school prior to exhausting all their remedies where "the defendant has acted in bad faith by failing to comply with the procedural provisions of section 615 in an egregious fashion." Since such conduct prevents the parents from presenting a meaningful challenge to the school board, the court reasoned that they should be reimbursed if they change the child's placement and ultimately prevail. Such reasoning appears sound to this court.

If, as Gregg's parents allege, they supposed that they had won appropriate approval of the Mill Creek School by the Committee, and were not informed for a considerable time that the School was not approved for the ensuing academic year, they had no chance to challenge the School Board, and they had no opportunity to request a different recommendation from the Committee or to seek approval from the Commissioner of Education.

Neither the language of the Education for Handicapped Act nor the legislative history suggests that a court may never compensate parents for tuition already paid. Section 615(e)(2) authorizes a court to "grant such relief as the court determines is appropriate." The Joint Explanatory

Statement of the conference committee, which inserted this language, commented that a court considering a complaint under this section "shall make an independent decision based on a preponderance of the evidence and shall grant *all appropriate relief.*" Conf.Rep.No.94–455, 94th Cong., 1st Sess. 50, *reprinted in* [1975] U.S.Code Cong. and Ad.News 1480, 1503 (emphasis added).

As noted, this has not been taken to mean that compensatory damages are to be generally available. *See, e.g., Anderson v. Thompson, supra.* Congress's goal was "full educational opportunities to all handicapped children" through an infusion of federal money. S.Rep.No.94–168, 94th Cong., 1st Sess. 8, *reprinted in* [1975] U.S. Code Cong. and Ad.News 1425, 1432. Large damage awards might frustrate this goal by stifling program innovation and depleting public coffers. Congress provided extensive procedural safeguards to rectify errors likely to arise because of the conceded lack of precision in identification, classification and program design.

But to allow reimbursement is to permit only a limited financial exposure. Moreover, reimbursement is plainly unavailable in situations covered by section 615(e)(3), 20 U.S.C. § 1415(e)(3), which provides that unless the parents and educational agency agree otherwise, "the child shall remain in the then current educational placement" while the parents are pursuing their administrative or judicial remedies. *Stemple v. Board of Education,* 623 F.2d 893 (4th Cir. 1980), *cert. denied,* 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). Reimbursement has been thought appropriate in limited instances, for example, when a school board attempted to move the child during the academic year, *Zvi D. v. Ambach,* 520 F.Supp. 196, 204 (E.D.N.Y.1981), or when the child had no "then current educational placement" because all parties agreed the child could not remain in his previous educational setting, *Monahan v. Nebraska,* 491 F.Supp. at 1088–89; *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104 at 1106–07, or when the unilateral placement is necessary to eliminate a risk of injury to the child, *Tatro v. Texas,* 516 F.Supp. at 978.

Awards limited to tuition in these types of cases would hardly impose on school boards a financial burden apt to discourage innovation. Nor would such reimbursement significantly reduce funds available for educational services for the handicapped. Indeed, such awards are consistent with the goals of the Education for Handicapped Act by obliging school boards to pay for their failure to make timely placement decisions. In *Jose P. v. Ambach,* 79 C 270 (E.D.N.Y. Jan. 5, 1982), this court entered an order authorizing unilateral placement of children at public expense by parents awaiting placement more than sixty days.

Finally, the practice of the New York State Commissioner of Education suggests that reimbursement is an appropriate remedy. He routinely orders reimbursement when parents have paid tuition to an approved school because of the school board's inexcusable delay in evaluation or placement. *See, e.g., In the Matter of Miles K.,* 18 Educ. Dep't Rep. 15 (1978).

### B

The law is not settled as to whether the courts may award damages for violations of section 504 of the Rehabilitation Act. Some cases have allowed damages. *Miener v. Missouri,* 673 F.2d 969 (8th Cir. 1982); *Patton v. Dumpson,* 498 F.Supp. 933, 937–39 (S.D.N.Y.1980). Others have not. *Ruth Anne M., et al. v. Alvin Independent School District,* 532 F.Supp. 460 (S.D.Tex., 1982); *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104, 1112 (N.D.Cal.1979). In any event the legislative history of the Rehabilitation Act and its amendments does not suggest that the remedies are to be limited to injunctive and declaratory relief. *Ruth Anne M., et al. v. Alvin Independent School District, supra; Patton v. Dumpson, supra.*

One thing is clear, and that is that section 504 was modeled after Title VI of the Civil Rights Act of 1964 (Title VI), which bars discrimination on account of race by recipients of federal grants. S.Rep.No.93–1297,

93d Cong., 2d Sess. 4, *reprinted in* [1974] U.S.Code Cong. & Ad.News 6373, 6390–91; *Davis v. United Air Lines, Inc.*, 662 F.2d 120 (2d Cir. 1981). It may therefore be assumed that remedies for violations of section 504 are similar to those available under Title VI.

Two members of a divided panel of the Court of Appeals for the Second Circuit have indicated that an award of retroactive seniority and back pay is available in a Title VI suit. *Guardians Association of New York City Police Department, Inc. v. Civil Service Commission of New York*, 633 F.2d 232, 272–74 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982). *Contra, Drayden v. Needville Independent School District*, 642 F.2d 129 (5th Cir. 1981). Tuition reimbursement is a limited form of relief as is back pay. It therefore seems appropriate to permit such reimbursement for a violation of section 504.

That section is not a funding provision, but guarantees to handicapped individuals the right not to be discriminated against. *Davis v. United Air Lines, Inc., supra.* Thus, its purpose would be furthered, not frustrated, by reimbursement in an appropriate case.

### VI

■ Assuming *arguendo* that, as the School Board contends, the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988, does not authorize an award of fees in a suit charging a violation of the Education for Handicapped Act, plaintiffs have alleged violations of rights secured not only by that Act but by section 504 of the Rehabilitation Act. Section 505 of that Act, 29 U.S.C. § 794a, authorizes a court to allow the prevailing party a reasonable attorney's fee "[i]n any action or proceeding to enforce or charge a violation of" section 504. The court thus need not decide whether attorneys' fees are available in a suit under the Education for Handicapped Act.

### VII

Defendant's motion for summary judgment is granted as to the claim for prospec-

tive relief and for reimbursement from September 1980 to date, and is otherwise denied. So ordered.