Brian SMRCKA, a minor, by his parents and next friends, Richard and Kathleen SMRCKA; and Richard and Kathleen Smrcka, Plaintiffs,

v.

Gordon M. AMBACH, Commissioner of Education; New York State Department of Education; and The Board of Education of the Tuckahoe Common School District, Defendants.

No. CV 82–2441.

United States District Court,
E.D. New York.

Jan. 24, 1983.

Youth Advocates of Long Island by Alan J. Azzara and Adele Shapiro, Bay Shore, N.Y., for plaintiffs.

Pelletreau & Pelletreau by Vanessa M. Sheehan, Patchogue, N.Y., for Bd. of Educ.

Robert Abrams, Atty. Gen., State of N.Y. by Andrea Green, Asst. Atty. Gen., New York City, for state defendants.

## MEMORANDUM & ORDER

PLATT, District Judge.

Brian Smrcka, by his parents and next friends, and his parents, have sued the Board of Education of the Tuckahoe Common School District (District), the New York State Department of Education (Department), and the State Commissioner of Education, Gordon M. Ambach (Commissioner), to recover tuition and costs incurred during the year and a half he spent at a private school in Maine. In addition to reimbursement, the plaintiffs seek compensatory and punitive damages from the three defendants, and injunctive and declaratory relief.

The defendants now move for an order dismissing all counts for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

### I.

Brian Smrcka is an emotionally disturbed teenager. In January 1980, after examination and evaluation by District staff, Brian was placed at a private residential school in New York State. After his expulsion the following September, he returned to the District for about four months of home tutoring. At that point, apparently having concluded that none of the defendants could (or had made a good-faith effort to) place Brian, his parents sent him to a private school in Maine, from which he was graduated in June, 1982, two months after his eighteenth birthday. The Maine School is not on the Commissioner's list of approved facilities for out-of-state educational place-

ment. Thus, while the Hearing Officer and the Commissioner found the program not to be inappropriate, plaintiffs' claim was denied at both levels of administrative review. This lawsuit followed.

The plaintiffs contend that the Department's decision violated their "rights to a free appropriate public education" (Complaint, ¶ 23) and thereby generated causes of action under the Fifth and Fourteenth Amendments to the United States Constitution, the Education for All Handicapped Children Act (EHA), 20 U.S.C. § 1401 *et seq.* (1978 & Supp.1982), 42 U.S.C. § 1983 (1981), the Due Process and Equal Protection Clauses of the New York State Constitution, and N.Y.Educ.Law § 4401 *et seq.* (McKinney 1981 & Supp.1982). Jurisdiction is allegedly based, *inter alia,* on 28 U.S.C. § 1331 (1982), 28 U.S.C. § 1343 (1981) and 20 U.S.C. § 1415(e) (1978).

As noted above, defendants seek an order dismissing all counts for failure to state a claim upon which relief can be granted. The State defendants also contend that the EHA claim is barred by the statute of limitations, and all federal claims by the Eleventh Amendment. Since the parties have submitted affidavits or exhibits, we will treat this as a summary judgment motion. Fed.R.Civ.P. 12(c). All sides appear to concede, however, that no material issue of fact exists. In addition, because Brian Smrcka no longer is enrolled in the Maine program, and because his parents have not requested an additional referral, the issue of declaratory and injunctive relief is now moot. Therefore, the discussion that follows will consider only the question of damages.

## II.

Brian Smrcka, born April 12, 1964, was adopted by his parents at the age of eight months. He spent his early years in the Port Washington public school system, and grades four through eight in two parochial schools. After his parents moved to the Tuckahoe Common School District, he was enrolled as a tuition student at Southampton High School. During the fall of his freshman year, after he exhibited physically aggressive and verbally abusive behavior at home, and experienced academic and drug-related problems in school, Brian's parents and high school staff jointly requested that he undergo psychological evaluation. As a result of two sessions with Brian, on November 21, 1978 and December 14, 1978, District Psychologist Harmon N. Cohen, Ph.D., concluded that the boy was "a highly manipulative, impulsive, potentially explosive adolescent", and recommended that he be examined by Psychiatric Consultant Richard P. Perrault, M.D., of the Student Consultation Services, Board of Cooperative Educational Services (BOCES) I. In addition, Dr. Cohen urged the Smrckas "to file a PINS [Person In Need of Supervision] petition in Family Court in order to locate a residential setting for Brian which is therapeutically oriented." Complaint Exhibit A. They did not act on the latter recommendation.[1]

Dr. Perrault evaluated Brian on January 23, 1979, concluded that he "present[ed] signs, symptoms, and history of a seriously disturbed emotional disorder," and recommended to the Southampton public school system's Committee on the Handicapped (COH)[2] that he promptly receive "further

1. In addition, on June 14, 1979, Dr. Cohen wrote to a state Family Court judge who was then reviewing a legal matter in which Brian was involved. He recommended that the judge consider placing the boy in a residential treatment facility, and mentioned the George Jr. Republic in Freeville, New York. The record does not indicate what efforts, if any, the Family Court judge or plaintiffs made to follow up this suggestion. Affidavit of Dr. Harmon Cohen (October 15, 1982) [Cohen Affidavit] ¶ 6.

2. In conformity with the EHA, 20 U.S.C. §§ 1401(19), 1412(4), 1414(a)(5) (1978), each local board of education in New York State must establish a Committee on the Handicapped or COH to determine which children in its area are handicapped, and to develop and annually revise an "individualized educational program" (IEP) for each child so identified. In addition, the COH must recommend to the parent and to the board an appropriate educational placement for each handicapped child. N.Y. Educ.Law § 4402.1–b (McKinney Supp.1982).

evaluation and treatment in a residential treatment facility."

Pursuant to Dr. Perrault's recommendation, on May 1, 1979 Brian was temporarily placed at the Sagamore Children's Center, a New York State Office of Mental Health facility, for further testing and evaluation. In a June 1, 1979 progress report, Social Worker Shirley Wallach recommended that, to solidify the gains made at Sagamore, Brian be placed in a residential treatment center rather than returned to Southampton High School. A June 2, 1979 letter to Dr. Cohen from Unit Chief Olga J.A. Asar, M.D., listed two such facilities, the Anderson School, Staatsburg, New York, and the George Jr. Republic, Freeville, New York. Complaint, Exhibit C. After being diagnosed as having a "Behavior disorder of Adolescence, Unsocialized Aggressive Reaction," Brian was discharged from Sagamore late in June, 1979 so that he could spend another season at summer camp.

The local COH apparently encountered difficulty placing the boy, for it was not until January 9, 1980 that he was accepted by a suitable residential program—the Anderson School. Plaintiffs contend that Brian made considerable progress during his first semester there; however, administrative and personnel changes that occurred during the summer "proved disastrous" for him. Complaint, ¶ 14. On September 24, 1980, after engaging in "drug and alcohol use on campus, sporadic episodes of violence, and both on and off campus burglaries" (Decision of Commissioner Ambach [April 21, 1982] at 2), Brian was expelled from the Anderson School.

At this point the chronology becomes less certain. Apparently sometime in October, 1980, the District and the Smrckas agreed that, on an interim basis, Brian would receive about 10 hours a week of home tutoring at public expense until a suitable place-

ment could be found. According to plaintiffs, "[f]or more than a year, the COH ... contacted virtually every school on the list approved by the New York State Education Department," and every one of those schools rejected him "on the grounds that they were inappropriate to his special needs."[3] Complaint, ¶ 15. On behalf of the COH, Dr. Cohen contacted Regional Associate Steven Morse of the Department and Diane A. Norris of the Downstate Component of the New York State Council on Children and Families to seek their help in placing Brian. Although it seems that Mr. Morse was not able to offer any suggestions, Ms. Norris presented two: an out-patient alcoholic rehabilitation center in Garden City, New York, and the Samaritan Halfway House in Ellenville, New York. Plaintiffs contend that they contacted the first center and were told that it was "totally inappropriate" for their son, and that Mr. Smrcka visited the second and agreed with staff there that this facility also was inappropriate. Complaint, ¶¶ 16, 18. Although in a February 3, 1981 letter to plaintiffs, Ms. Norris implied that plaintiffs flatly rejected a proffered interview with the director of the Samaritan Halfway House (Complaint, Exhibit D), both Hearing Examiner Stanley Abrams and Commissioner Ambach conceded that extensive efforts had been made to find a suitable placement for Brian and that these proved unavailing. In addition, Examiner Abrams credited plaintiffs' account of the Samaritan Halfway House rejection. Appeal of Brian Smrcka (December 6, 1981) at 2. So do we.

On February 6, 1981, after their son had received about four months of home tutoring and with the growing conviction that COH and State efforts to place him would fail, plaintiffs—apparently on the informal recommendation of William J. Maier, the tutor—enrolled Brian in the Elan School in Poland Spring, Maine.[4] At the time, they

---

3. Brian was rejected by 10 schools prior to his enrollment at the Anderson School. In addition, from November 25, 1980 to January 22, 1981, Dr. Cohen made at least 10 more unsuccessful attempts to find a private residential

placement for Brian. Cohen Affidavit, ¶¶ 7, 11, Exhibits A, E.

4. Plaintiffs also considered placing their son at the DeSisto School in Stockbridge, Massachusetts. The District advised them that this program, too, had not received the Commissioner's

knew the School had not been approved for placement by either the COH or the Commissioner. Complaint, ¶ 19. However, all parties appear to agree that the Elan School did offer an appropriate program.[5]

### III.

On September 16, 1981—after Brian had spent about seven months at Elan—the COH met and informed plaintiffs that it remained unable to find an appropriate approved placement for Brian. On the basis of this decision, plaintiffs requested an "impartial due process hearing," 20 U.S.C. § 1415(b)(1)–(2) (1978); N.Y.Educ.Law § 4404.1 (McKinney 1981), 8 N.Y.C.R.R. § 200.5 (1982), in order to present their claim that the COH should have borne the cost of the Elan placement. The hearing took place on November 12, 1981. A month later, Examiner Abrams decided that plaintiffs were not entitled to reimbursement because Elan, although an appropriate facility, was not on the Commissioner's approved list. Pursuant to 20 U.S.C. § 1415(c) (1978) and 8 N.Y.C.R.R. § 200.5 (1982), that decision was appealed to Commissioner Ambach. On April 21, 1982, the Commissioner dismissed the appeal, holding that (1) "a parent may not obtain tuition reimbursement for a unilateral placement"; and (2) Brian, now no longer a minor, would have to be given an opportunity to participate in any subsequent placement process.[6] 34 C.F.R. § 300.344 (1981). This lawsuit was brought in the Eastern District of New York on August 19, 1982. 20 U.S.C. § 1415(e)(4) (1978).

### IV.

The EHA provides federal grants to states that can demonstrate they have effectuated "a policy that assures all handicapped children the right to a free appropri-ate public school education." 20 U.S.C. § 1412(1). A qualified grant recipient, New York requires each local board of education to establish a COH, the duties of which include recommending to the board and the parent an appropriate educational placement for each handicapped child in the board's jurisdiction. *Gregg B. v. Board of Education of Lawrence School District,* 535 F.Supp. 1333, 1336 (E.D.N.Y.1982). Based on this recommendation, the board must "furnish [a] suitable educational opportunit[y]" from among (but not limited to) alternative placements listed by N.Y.Educ.Law § 4401.2(a)–(m) (McKinney 1981 & Supp. 1982). These possible placements range from home instruction and special classes to out-of-state private schools approved by the Commissioner. N.Y.Educ.Law §§ 4401.-2(a), 4401.2(f), 4401.2(h). However, only the Commissioner is authorized to enter into contracts with out-of-state schools; and placement in such facilities is conditioned upon a determination by the Education Department that appropriate instruction is unavailable within New York State. *Dubner v. Ambach,* 52 N.Y.2d 910, 437 N.Y.S.2d 659, 419 N.E.2d 337 (1981), *aff'g* 74 A.D.2d 949, 426 N.Y.S.2d 164 (3d Dep't 1980). N.Y. Educ.Law §§ 4402.2(b)(3), 4407.1 (McKinney 1981 & Supp.1982); 8 N.Y.C.R.R. 200.7 (1982). Although it is generally true that parents are entitled to an impartial due process hearing if they disagree with the placement recommendation of the COH (or if it fails to make one), N.Y.Educ.Law § 4404.1, this procedure is not available to review the Commissioner's refusal to contract with an out-of-state facility. *Gregg B. v. Bd. of Ed. of Lawrence School Dist.,* 535 F.Supp. at 1336; *In re Board of Education of New York,* 19 Ed.Dep't Rep. 1 (1979). The Commissioner's decision may be re-examined only through an Article 78

---

approval. Cohen Affidavit, ¶ 8, Exhibit C (letter dated October 15, 1980 to plaintiffs from District Superintendent Aurelio Colina).

**5.** This view was shared by Dr. Cohen, the COH, plaintiffs, Elan staff, and the Hearing Examiner. The State conceded the point at oral argument on December 17, 1982. Although the Commissioner concluded that the record was too thin to support the finding that Elan was appropriate, we give more credit to the expertise of the COH and Dr. Cohen, and hold that it does.

**6.** The record does not reveal what Brian did after his graduation from Elan.

proceeding brought in State Supreme Court. N.Y.Educ.Law § 4404.3 (McKinney 1981); N.Y.C.P.L.R. § 7801 (McKinney 1981).

■ But, in most cases, parents will be able to seek an impartial due process hearing before an examiner and appeal an adverse ruling to the Commissioner. When such a course is pursued, the EHA imposes certain requirements on both sides. For purposes of this case, the most important is the so-called "status quo" provision of 20 U.S.C. § 1415(e)(3):

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

Whatever else it may mean, this provision does not apply if no "current educational placement" has been made; and in the absence of such a "placement," public funding of certain private programs may be required. In *Jose P. v. Ambach*, 3 E.H.L.R. 553:298 (E.D.N.Y.1982), *modified in part* No. 79 C 270 (E.D.N.Y. July 2, 1982), Judge Eugene H. Nickerson ordered

> that parents of handicapped students who have requested special education services and have not received a placement recommendation within sixty days of referral for evaluation . . . be permitted to enroll their children in appropriate programs conducted at non-public schools approved by the New York State Commissioner of Education. . . .

*See Zvi D. v. Ambach*, 694 F.2d 904, 907 n. 6 (2d Cir.1982). Judge Nickerson's order mirrored earlier relief granted to New York City children by the Commissioner himself, *Matter of Riley Reid*, 17 Educ.Dep't Rep. 71 (1977), and the referral timetable imposed by State regulation. *See* 8 N.Y.C.R.R. § 200.4(c)–(d) (1982). *See Matter of Miles*

*K.*, 18 Educ.Dep't Rep. 15 (1978) (reimbursement approved due to School Board's inexcusable delay in placement). Significantly, this self-help remedy was limited to placement in appropriate and Commissioner-approved facilities. *Zvi D. v. Ambach*, 694 F.2d at 907 n. 6.

### V.

The preceding statutory discussion will now be applied to the case before this Court. The central issue to be decided is whether plaintiffs were entitled to place Brian in a non-approved private school prior to exhausting or even initiating their State administrative appeals. If they were not entitled to do this, they may not obtain damages or reimbursement under the EHA.

It might seem that we should begin by determining whether the tutoring Brian received in early 1981 constituted his "then current educational placement" within the meaning of 20 U.S.C. § 1415(e)(3). Unfortunately, virtually none of the little existing legislative history of this provision sheds light on its meaning. Moreover, the few courts to address this interpretive problem have left behind even fewer observations to guide others. *E.g., Zvi D. v. Ambach*, 694 F.2d at 906 n. 5; *Stemple v. Board of Education of Prince George's County*, 623 F.2d 893, 897–98 (4th Cir.1980), *cert. denied*, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). In *Zvi D. v. Ambach, supra,* the Second Circuit did suggest that, in the absence of COH approval, the self-help route does not create a "current educational placement." But, the issue in that case was whether the COH had found the placement made by the plaintiff to be "appropriate" (Commissioner approval apparently was not an issue). The District and Circuit Courts both held that it had not, and that therefore plaintiffs' son had never been "placed." Here, on the other hand, one private placement—to the Anderson School—clearly was made; the issue is whether either (1) that placement continued after Brian was expelled and put on home

tutoring; or (2) the tutoring itself constituted a new placement.[7]

However, we need not decide whether or not Brian Smrcka was in a "current educational placement" at the time his parents sent him to the Elan School; for, either way, plaintiffs' claim for reimbursement must fail.

■ If home tutoring constituted such a placement, it is clear that the plaintiffs—if they wanted State funding—were bound to maintain their son in that program. *Vander Malle v. Ambach,* 673 F.2d 49, 52 (2d Cir.1982); *Gregg B. v. Board of Ed. of Lawrence School Dist.,* 535 F.Supp. at 1339 ("reimbursement is plainly unavailable in situations covered by . . . 20 U.S.C. § 1415(e)(3)").

Although some cases have construed the "then" modifying "current educational placement" in 20 U.S.C. § 1415(e)(3) to refer to the time the impartial hearing process begins, 20 U.S.C. § 1415(b)(1)(E), *see Monahan v. State of Nebraska,* 491 F.Supp. 1074, 1089 (D.Neb.1980), *aff'd in part, vacated in part,* 645 F.2d 592 (8th Cir.1981)— an event that did not occur here until September 1981—we do not believe that on the facts presented to this Court application of the 20 U.S.C. § 1415(e)(3) status quo provision should depend upon whether parents sought self-help before or after they initiated § 1415(b)(1)(E) proceedings. As the Fourth Circuit stated in *Semple v. Board of Ed. of Prince George's Cty., supra:*

> The duty . . . arises as soon as school authorities make a decision as to identification, evaluation and placement of a handicapped child and continues until a decision not to contest it is reached or, if

a contest ensues, until that contest is finally determined.

623 F.2d at 898. *Accord Zvi D. v. Ambach,* 694 F.2d at 906; *Foster v. District of Columbia Board of Education,* 523 F.Supp. 1142, 1146 (D.D.C.1981); Op. Commissioner Educ. Dep't, 18 [N.Y.] Educ.Dep't Rep. 136, 138, 142, 161, 179, 347 (1979). While the Second Circuit has not decided whether tuition costs are recoverable as damages if judicial review determines that a public placement was inappropriate, *Zvi D. v. Ambach,* 694 F.2d at 908 n. 8 (courts divided over whether EHA allows damages), the plaintiffs in case before us did not challenge the appropriateness of home tutoring in an impartial hearing prior to February, 1981; nor do they now demonstrate that it had lost its usefulness after four months, or violated the Commissioner's regulations or decisions. The proper course would have been for the plaintiffs to have maintained their son's then-current placement while simultaneously initiating a § 1415(b)(1)(E) proceeding in order to change it. To attempt this now constitutes a transparent effort to circumvent the exhaustion requirements of the EHA, as well as the "automatic preliminary injunction" established by its status quo provision. *Zvi D. v. Ambach,* 694 F.2d at 906.

■ The problem becomes somewhat thornier if we suppose that Brian was *not* in an "educational placement" in February, 1981, because (1) the procedural requirements for such a placement had not been met vis-a-vis home tutoring; or (2) tutoring, while initially a bona fide placement, is by its nature only a temporary solution and thus was transformed by the passage of

---

7. *Monahan v. State of Nebraska,* 491 F.Supp. 1074 (D.Neb.1980), *aff'd in part, vacated in part,* 645 F.2d 592 (8th Cir.1981), another case to sidestep interpretation of the phrase "current educational placement," did suggest that a worsening handicap could itself undo a "placement." *Id.* at 1089. At the same time, the court stressed that the change—physical deterioration—had not been caused by either the school district or the parents. *Id.* at 1088. Whether this reasoning applies in the context of an emotional handicap is a question we need not decide. While the Commissioner has ruled

that home instruction is not a long-range alternative for any student who can benefit from instruction in a suitable private facility, 14 [N.Y.] Educ.Dep't Rep. 143 (1977), this does not preclude such instruction from being designated as a "placement." The record offers little guidance here. Plaintiffs apparently gave their written approval to having their son receive home instruction, Cohen Affidavit, Exhibit C, but it is not clear whether the COH reviewed and approved this change in Brian's Individualized Educational Program [IEP].

time into an inappropriate program; or (3) the correct moment to consider placement status is at the time parents bring a formal complaint and in this case that was well after they had enrolled their son in a patently non-approved program. But the result is the same. We decline to expand the State's EHA obligations beyond what is required by *Jose P. v. Ambach, supra*—that is, reimbursement of tuition paid to approved and appropriate private schools where public placement is not offered within 60 days of application. Plaintiffs cannot invoke the aid of *Jose P.* because they did not place their son in an *approved* school. Even if it could be shown that Elan was the only appropriate program in existence (or at least that all other appropriate programs had not been approved),[8] we are of the opinion that the proper course would have been to seek relief in the nature of mandamus through an Article 78 proceeding in State Court. N.Y.Educ.Law § 4404.3; N.Y.C.P.L.R. §§ 7801, 7806.[9] Since there is no evidence that Elan would have refused to enter into a contract with the Commissioner, we need not determine what type of relief persons in the plaintiffs' position might be entitled to were they able to show that their child was so difficult to place that one may reasonably assume no suitable

placement would be found.[10] Because plaintiffs initially failed to follow the appropriate procedural course, they are now barred in this Court from obtaining reimbursement for their son's tuition. This is not to suggest, however, that they also are barred from seeking a remedy in State Court.

It follows from this conclusion that we need not consider whether damages are a part of the "appropriate relief" that may be granted under the EHA. 20 U.S.C. § 1415(e)(2). Courts are divided on that question.[11] *Compare Miener v. State of Missouri,* 673 F.2d 969, 979–80 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) *and Hines v. Pitt County Board of Education,* 497 F.Supp. 403, 409 (E.D.N.C.1980) *and Loughran v. Flanders,* 470 F.Supp. 110 (D.Conn.1979) *with Anderson v. Thompson,* 658 F.2d 1205, 1209–14 (7th Cir.1981) *and Gregg B. v. Board of Ed. of Lawrence School Dist.,* 535 F.Supp. at 1338–39 *and Tatro v. State of Texas,* 516 F.Supp. 968, 977–80 (N.D.Tex. 1981) *and with Department of Education v. Katherine D.,* 531 F.Supp. 517, 528 (D.Hawaii 1982) (dictum); *Boxall v. Sequoia Union High School District,* 464 F.Supp. 1104, 1112 (N.D.Cal.1979).[12]

8. Plaintiffs have presented no facts suggesting that an approved program did not exist or could not have been developed within a reasonable time to ensure that their son received a "free appropriate public education." 20 U.S.C. § 1412(1) (1978).

9. Another reason for declining to extend *Jose P. v. Ambach,* 3 E.H.L.R. 553:298 (E.D.N.Y. 1982), *modified in part,* No. 79–C–270 (E.D. N.Y. July 2, 1982) is that, there, an Article 78 proceeding was never available to provide immediate review of the local board's delay; conversely, in the case before this Court, Article 78 review seems to have been a possibility, at least at some point.

10. It is worth noting that plaintiffs might have sought alternative relief from the state Family Court. *See supra* note 1 and accompanying text.

11. The Eleventh Amendment may bar this type of suit as against the Department. Some cases do not discuss, or reach, the question. Because we hold that persons in plaintiffs' position cannot recover under the EHA, we also need not

address the constitutional question. *See infra* note 14.

12. An excellent discussion of the damage question is contained in *Anderson v. Thompson,* 658 F.2d 1205, 1209–14 (7th Cir.1981). That case would permit limited monetary relief only upon a showing of "exceptional circumstances"— that a unilateral placement was made in the face of either (1) a school-ordered arrangement that endangered the child's physical health; or (2) defendant's bad-faith failure to comply with the procedural provisions of the EHA "in an egregious fashion." Only the latter exception is of potential relevance here. However, given the District's efforts to find an appropriate placement up to the time plaintiffs sent their son to Elan, we cannot say that the defendants acted in egregious bad faith. While school officials seemingly did try to portray plaintiffs as more intransigent than they may have been, *compare* Complaint, Exhibit D (letter dated February 3, 1981 from Diane A. Norris to Mr. and Mrs. Richard Smrcka) *with* Cohen Affidavit, Exhibit F (letter dated March 2, 1981 from Mrs. Richard P. Smrcka to Miss Diane A. Nor-

## VI.

The plaintiffs also claim that, because the defendants violated both the EHA and the equal protection and due process clauses of the Fourteenth Amendment, they are entitled to damages under 42 U.S.C. § 1983 (1981).

■ The decisions are in conflict as to whether § 1983 provides a remedy for violations of the EHA. *Miener v. State of Missouri,* 673 F.2d at 976 (citing cases). We are inclined to agree with the Seventh Circuit, which held in *Anderson v. Thompson, supra,* that the EHA's remedy is exclusive because (1) it contains a comprehensive administrative and judicial enforcement system; (2) Congress intended that the EHA create new rights; and—most important—(3) § 1983, in providing for damages, contains a remedy that is broader than and inconsistent with the remedial provisions of the EHA. *See Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (§ 1983 does not apply " 'where the governing statute provides an exclusive remedy for violations of the [relevant] [a]ct,' " quoting *Maine v. Thiboutot,* 448 U.S. 1, 22 n. 11, 100 S.Ct. 2502, 2513 n. 11, 65 L.Ed.2d 555 (1980) (dissent)). We need not consider this question, however, because § 1983, in creating no new substantive rights, *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), depends for its existence upon the violation of a federal statutory or constitutional provision. Neither is present here. The plaintiffs' only statutory claim involves the EHA, and we have already held that defendants did not violate it.

■ Although plaintiffs set forth equal protection and due process claims, these were neither briefed nor raised at oral argument. *Cf., Anderson v. Thompson,* 658 F.2d at 1217 n. 19. Moreover, even if they had been, plaintiffs' § 1983 claim would fail. Education has not been accorded the status of a constitutionally guaranteed right, subject to strict scrutiny under the equal protection clause. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); rather, it is deemed a property interest.[13] *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Thus, to be sustained, the defendants' activities need only be rationally related to a legitimate state interest. *San Antonio Independent School District v. Rodriguez,* 411 U.S. at 39–40, 93 S.Ct. at 1300. Here, we cannot say that the Department's refusal to reimburse a parent who makes a unilateral placement is not rationally related to the goal of balancing educational quality with cost-effective programming. *See MacFarlane v. Grasso,* 696 F.2d 217, 223 (2d Cir.1982). Hence, to the extent that the defendants must affirmatively provide Brian Smrcka with an appropriate educational opportunity their duty is established by statute and not by the Constitution. *Miener v. State of Missouri,* 498 F.Supp. 944, 949 (E.D.Mo.1980), *aff'd in part, remanded in part, rev'd in part on other grounds,* 673 F.2d 969 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982). *See Boxall v. Sequoia Union High School District,* 464 F.Supp. at 1108. *Cf., Sherer v. Waier,* 457 F.Supp. 1039, 1047–48 (W.D.Mo.1977); *United Handicapped Federation v. Andre,* 409 F.Supp. 1297, 1301–02 (D.Minn.1976), *vacated on other grounds,* 558 F.2d 413 (8th Cir.1977). Finally, plaintiffs provide no hint as to how their due process rights

---

ris), this does not undermine their good-faith effort to place Brian. Cohen Affidavit, ¶¶ 7, 11, Exhibits A, E. Moreover, the record's one example of potential bureaucratic ineptitude occurred well after plaintiffs unilaterally placed their son at Elan. Cohen Affidavit, Exhibit H (letter dated August 4, 1981 from District Superintendent Aurelio Colina to Mr. and Mrs. Richard Smrcka).

**13.** Nor is Brian Smrcka a member of a "suspect class." *Cf. MacFarlane v. Grasso,* 696 F.2d 217, 223 (2d Cir.1982); *United Handicapped Federation v. Andre,* 409 F.Supp. 1297, 1301–02 (D.Minn.1976) (wheelchair handicapped persons unable to use buses), *vacated on other grounds,* 558 F.2d 413 (8th Cir.1977).

might have been abridged. They do not attack the administrative review procedures themselves, nor do they show that they were treated unfairly in this case. If anything, plaintiffs ignored potential avenues of relief and took matters into their own hands. *See Sherer v. Waier,* 457 F.Supp. at 1048. *Cf. Foster v. District of Columbia Board of Education,* 523 F.Supp. at 1146 ("The compassion the Court feels for a parent's extraordinary burden of compelled decision . . . cannot be converted to a denial to the defendants [sic] of their due process rights under the law").

In sum, plaintiffs have not stated a claim under 42 U.S.C. § 1983.

## VII.

Finally, the plaintiffs allege violations of the due process and equal protection clauses of the New York State Constitution, and of N.Y.Educ.Law § 4401 *et seq.* However, because we have now dismissed all of the federal claims in this action, we decline to exercise pendent jurisdiction over purely State-law controversies. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).[14]

Therefore, the motions of all defendants will be granted.

SO ORDERED.

---

14. In view of our disposition, we need not consider the various defenses raised by the District or the Department, including the Eleventh Amendment, statute of limitations, and failure to file a timely notice of claim.