JOSEPH TAGLIANETTI, a Minor, Plaintiff-Appellee, v. JOSEPH M. CRONIN, State Superintendent of Education, *et al.*, Defendants (Board of Education of Northfield Township High School District No. 225, Defendant-Appellant).

First District (3rd Division)   No. 84—1374

Opinion filed April 30, 1986.

Margarite Primozich Loew, of Brydges, Riseborough, Morris, Franke & Miller, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellees Joseph M. Cronin and State Board of Education.

Jeffrey A. Brown, of Engerman, Erlich, Jacobs & Berman, Ltd., of Chicago, for appellee Joseph Taglianetti.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, Joseph Taglianetti (Joseph), a resident of codefendant Northfield Township High School District No. 225 (school district) was diagnosed as emotionally handicapped, entitling him to "a free appropriate public education" under the Education for All Handicapped Children Act (EAHCA), (20 U.S.C. sec. 1400 *et seq.* (1976)); the handicapped children article of The School Code (Ill. Rev. Stat. 1983, ch. 122, par. 14—1.01 *et seq.*), 34 C.F.R. 300.1 *et seq.* and the Illinois Rules and Regulations to Govern the Administration and Operation of Special Education (Ill. Admin. Reg. 1979, art. I-XV).

Mr. and Mrs. John Taglianetti (the Taglianettis) brought this action as parents and next-of-friend of Joseph against codefendants: the school district; Joseph Cronin, State Superintendent of Education (State Superintendent); the Illinois State Board of Education (ISBE); and the Illinois Office of Education (IOE). The Taglianettis sought administrative review of the school district's proposed placement of Joseph in a day-program special-education facility. The Taglianettis also sought reimbursement from the School district of the cost they expended in unilaterally placing Joseph in a residential private special-education facility. The school district counterclaimed against the ISBE and the IOE, seeking reimbursement of any sum it was required to pay to the Taglianettis. The trial court dismissed the school district's counterclaim and entered judgment against the school district, leaving it solely responsible for reimbursing the Taglianettis. The school district appeals.

The relevant facts are as follows. In September 1978, Joseph exhibited highly disruptive conduct in his classes and later began cutting classes. The school district recommended to the Taglianettis that Joseph be evaluated for special education. The Taglianettis consented. The results of the school district's case-study evaluation revealed that Joseph suffered from a behavior disorder. On November 20, 1979, the school district student review board, at its multi-disciplinary staff conference, reviewed the case-study components and thereafter declared Joseph eligible for special education. The multi-disciplinary staff concluded that the school district's case study evaluation supported the determination that a day program would be appropriate for Joseph's needs. The school district then recommended placement in the Arden Shore day program.

The following week, the Taglianettis requested a due process hearing challenging the proposed placement as inconsistent with the findings of the case study evaluation. The Taglianettis also based their challenge on the findings of Dr. Davenport, Joseph's private psychologist, who recommended a 24-hour residential placement, as opposed to a day program. Prior to the hearing, however, the Taglianettis placed Joseph at the Grove School in Madison, Connecticut, a facility not approved by the ISBE or the Governor's Purchase Review Board.

At the due process hearing on February 5, 1980, the hearing officer found that the school district's proposed placement at Arden Shore was supported by the case study evaluation and was appropriate for Joseph's educational and psychological needs. The Taglianettis then appealed the hearing officer's findings to the State Superintendent. On review, the State Superintendent addressed procedural issues and concluded that the school district's proposed placement complied with Rule 9.09 3i(1) of the Illinois Rules and Regulations to Govern the Administration and Operation of Special Education regarding evaluations of behavior disordered students. The State Superintendent also denied the Taglianettis' request for reimbursement of expenditures arising from Joseph's placement at Grove School, holding that Grove School was a nonapproved private facility.

In September 1980, the Taglianettis appealed the administrative decision to the circuit court. The trial court found, *inter alia*, that Joseph required placement in a 24-hour residential facility and, therefore, that the school district's proposed placement was inappropriate. The court ruled, however, that because the placement was in a facility that was neither programmatically nor cost approved, plaintiffs were barred from reimbursement. On July 26, 1983, the Taglianettis filed a motion for rehearing and reconsideration. After several hearings on

the motion, the trial court modified its order finding that Grove School was appropriate for Joseph's educational needs and held that the school district was fully responsible for reimbursing the Taglianettis for tuition and related costs. The school district appealed after the court entered the final money judgment against it.

The primary issue is whether the Taglianettis are entitled to recover from the school district the cost they expended in unilaterally placing Joseph in a nonapproved, private, special-education facility.

The EAHCA (20 U.S.C. sec. 1400 *et seq.*) provides grants of federal funds to States and local districts to assist them in providing educational services to the handicapped. Any State or local educational agency receiving funds under EAHCA must establish procedures whereby handicapped children and their parents may protect their rights to a "free appropriate public education." 20 U.S.C. sec. 1415(a); *Max M. v. Thompson* (N.D. Ill. 1983), 566 F. Supp. 1330.

Section 1415(b)(1)(E) and section 1415(b)(2) require respectively that the State must provide the parents "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of [their] child, or the provision of a free appropriate public education to such child" (20 U.S.C. sec. 1415(b)(1)(E)) and that "the parents or guardian shall have an opportunity for an impartial due process hearing." (20 U.S.C. sec. 1415(b)(2).) Thereafter, an aggrieved parent may seek review of the local agency's decision by an impartial officer at the State agency level. Finally, the parents may appeal to a State or Federal court to obtain appropriate relief. 20 U.S.C. sec. 1415(e)(2).

Under section 1415(e)(2), courts have found that monetary relief, limited to reimbursement, might be appropriate in the following instances: (1) where the parents' placement rather than the school district's proposed placement is proper and appropriate under the EAHCA (*Burlington School Committee v. Department of Education* (1985), 471 U.S. 359, 85 L. Ed. 2d 385, 105 S. Ct. 1996) and/or (2) upon a showing by the parents of "exceptional circumstances" under which the unilateral placement was effected. Such circumstances involve (i) a school-ordered arrangement that endangered the child's physical health and/or (ii) the school district acted in bad faith by failing to comply with the procedural provisions of the EAHCA "in an egregious fashion." *Anderson v. Thompson* (7th Cir. 1981), 658 F.2d 1205.

The Taglianettis maintain that since their placement was the appropriate one and due to the fact that "exceptional circumstances" were present in their case, the trial court correctly awarded them re-

imbursement. Contrarily, the school district, citing *In re Claudia K.* (1982), 91 Ill. 2d 469, 440 N.E.2d 78; *Smrcka v. Ambach* (E.D.N.Y. 1983), 555 F. Supp. 1227; *Juneau Academy v. Chicago Board of Education* (1984), 122 Ill. App. 3d 553, 461 N.E.2d 597; and *Anderson v. Thompson* (7th Cir. 1981), 658 F.2d 1205, contends that neither the "exceptional circumstances" nor the appropriate placement issues are relevant where the parents' placement is in a nonapproved facility. The school district therefore asserts that expenses incurred from placement in a nonapproved facility are not reimbursable. The record shows that the Taglianettis placed Joseph in Grove School, a private special education facility located in Madison, Connecticut. Grove School was neither program nor cost approved pursuant to the requirements of section 14—7.02 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 14—7.02).

"The statute [section 14—7.02] on its face clearly prohibits the placement of Illinois students in a nonapproved [sic] institution ***." (*Juneau Academy v. Chicago Board of Education* (1984), 122 Ill. App. 3d 553, 556, 461 N.E.2d 597.) In *In re Claudia K.* (1982), 91 Ill. 2d 469, 440 N.E.2d 78, our supreme court accepted the school district's argument that it had no authority or responsibility to provide reimbursement for the cost of placement in a nonapproved private facility. The *Claudia K.* plaintiffs argued, as the trial court held here, that the School Code did not forbid placement in a nonapproved facility but that such placement would not entitle the school district to reimbursement from the State. (*In re Claudia K.* (1982), 91 Ill. 2d 469, 478, 440 N.E.2d 78.) In rejecting this argument, the supreme court stated:

> "Under section 14—7.02 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 14—7.02) a district is authorized to place children in out-of-State and private special education facilities, under certain restrictions, and reimbursement of the district for certain expenses is provided. The first sentence of the second paragraph of this section states: 'No child shall be placed in a special education program pursuant to this Section if the tuition cost for special education and related services increased more than 10 percent over the tuition cost for the previous year or exceeds $4,500 per year unless such costs have been approved by the Governor's Purchased Care Review Board.' (Ill. Rev. Stat. 1979, ch. 122, par. 14—7.02.) Even if, however, this sentence could be construed as authorizing placement in a nonapproved institution while only denying reimbursement, a regulation governing District conduct in this area leaves no doubt as to the absence of placement authority:

'No nonpublic facility shall be utilized by a district until: (1) The facility is approved by the SBE, (2) Costs have been established for it by the Governor's Purchased Care Review Board, (3) Proposed residential placements are reviewed and approved by the Illinois State Board of Education prior to placement \*\*\*.' Adopted Amendments to the Rules and Regulations for Approval of Non-public Facilities Educating Handicapped Students under section 14—7.02 of the School Code, 5 Ill. Reg. 4577 (April 24, 1981).

Clearly, the District had no authority to place Claudia in Ridgeway, which was [non]approved \*\*\*." 91 Ill. 2d 469, 478-79, 440 N.E.2d 78.

Based on the *Claudia K.* holding, it is clear that since the school district has no authority to place students in nonapproved facilities, it is not responsible for reimbursement for such placements when made by the parents. In the instant case, the trial court concluded that the *Claudia K.* holding was inapplicable where "exceptional circumstances" were present and/or where the parents' placement was the appropriate one. We disagree.

In creating the right to reimbursement under "exceptional circumstances," the court in *Anderson v. Thompson* (7th Cir. 1981), 658 F.2d 1205, noted that the services selected by the parents must be services that "the school district was required to provide," *i.e.*, services in an approved institution. (*Anderson v. Thompson* (7th Cir. 1981), 658 F.2d 1205, 1213; see also *Claudia K.* (1982), 91 Ill. 2d 469, 440 N.E.2d 78 and *In re Special Education Placement of Walker* (1982), 107 Ill. App. 3d 1053, 1059, 438 N.E.2d 582, 587.) More specifically, in *Smrcka v. Ambach*, (E.D.N.Y. 1983), 555 F. Supp. 1227, plaintiffs sought reimbursement for the costs of unilaterally placing their son in a nonapproved facility. Unlike the present case, the parties in *Smrcka* agreed that the nonapproved facility was the appropriate placement. The *Smrcka* court noted, *inter alia*, that because the placement was in a nonapproved school, it need not consider the "exceptional circumstances" issue. (555 F. Supp. 1227, 1234.) For these reasons, the *Smrcka* court declined to award reimbursement of the money expended for that placement even though the parents' placement was the appropriate one. Accordingly, we hold that because the Taglianettis' placement was in a nonapproved private facility which the school district had no authority to provide, they are not entitled to damages or reimbursement under the EAHCA, notwithstanding the fact that their placement may have been the appropriate one. See *Juneau Academy v. Chicago Board of Education* (1984), 122 Ill. App.

3d 553, 461 N.E.2d 597, and *Smrcka v. Ambach* (E.D.N.Y. 1983), 555 F. Supp. 1227, 1234.

The Taglianettis cite to us *In re Special Education Placement of Walker* (1982), 107 Ill. App. 3d 1053, 438 N.E.2d 582. That case is inapposite. The present record shows that the Taglianettis unilaterally placed their son in an institution that had not been approved by the State of Illinois either as to program or as to costs. No such facts appear in *Walker*. True, in that case there was a unilateral placement of the son by the mother in Lakeside Children's Center, but there is no indication in *Walker* that Lakeside was a nonapproved institution. Indeed, the contrary appears. At Walker's due process hearing, the hearing officer recommended that the son be placed at Lakeside and that the school district pay the costs.

Because we have reversed the judgment of the trial court awarding the Taglianettis reimbursement, we need not address the remaining issues raised by the school district or the ISBE.

For the foregoing reasons, we reverse the judgment of the trial court.

Reversed.

RIZZI, P.J., and McGILLICUDDY, J., concur.