David HILLER, a Handicapped child by his Parents and Natural Guardians Robert HILLER and Nancy Hiller, Plaintiffs,

v.

BOARD OF EDUCATION OF the BRUNSWICK CENTRAL SCHOOL DISTRICT, Thomas Sobol as Commissioner of the New York State Department of Education and The New York State Department of Education, Defendants.

No. 87–CV–1141.

United States District Court, N.D. New York.

June 2, 1988.

Cooper Erving Savage Whalen Nolan 7 Heller, Albany, N.Y. (Robert G. Wakeman, of counsel), for plaintiffs.

Whiteman Osterman & Hanna, Kenneth S. Ritzenberg, Albany, N.Y., for defendant Bd. of Educ. of the Brunswick Central School.

James H. Whitney, New York State Educ. Dept., David F. Stever, Albany, N.Y., for defendants Sobol and NYS Dept. of Educ.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### Background [1]

Robert and Nancy Hiller commenced this action on behalf of their son, David, seeking relief under the Education of All Handicapped Children Act, 20 U.S.C. section 1400, *et seq.* ("EAHCA"). The plaintiff is seeking declaratory relief compelling the defendant Board of Education of the Brunswick Central School District ("school district"); Thomas Sobol, Commissioner of the New York State Department of Education; and the New York State Department of Education (referred to collectively as "the State defendants") to provide David with a "free appropriate public education" under the EAHCA,[2] which would include various provisions for assisting David with his alleged writing disability.

### A. 1985–1986 Academic Year

David Hiller is a twelve year old boy who apparently has difficulties integrating various motor, creative, and mechanical aspects of the writing process. He has a neuro-developmental weakness in sequencing information and in his attention skills. David entered the school district in September, 1985 at the fifth grade level. Shortly thereafter, David's teacher requested that the school district's psychologist evaluate David for the presence of a learning dis-

---

1. Although the court previously set forth many of these same facts in its December 3, 1987 decision and order, 674 F.Supp. 73 (N.D.N.Y. 1987), they are reiterated herein to provide a more complete understanding of the genesis of the present dispute.

2. The EAHCA creates a comprehensive scheme for assuring that handicapped children receive a "free appropriate public education." 20 U.S.C. section 1401(18) (West 1978).

ability based upon writing and attention problems.

In October of 1985, David was evaluated by the school district's psychologist on three separate occasions. Those evaluations were done with the consent of David's parents. Based upon those evaluations, the psychologist recommended that David *not* be labeled as a student with a handicapping condition, and the decision was made *not* to refer him to the local Commission on Special Education ("CSE"). David's parents were not notified of their procedural rights with respect to that decision as required by 8 N.Y.C.R.R. 200.5(a). (The beginning of a long list of alleged procedural violations.)

In February of 1986, David's parents, on their own initiative, arranged for him to be evaluated at the Boston Children's Hospital. That evaluation was done without the school district's knowledge; the district was completely unaware that David's parents questioned the adequacy of the earlier evaluation done by the district psychologist. Eggleston Affidavit (2/29/88) at par. 8. The doctor at the Boston Children's Hospital concluded that David did have a learning disability and that remedial help outside the classroom was warranted. In April of 1986, at Mrs. Hiller's request, the CSE met again to consider whether David had the handicapping condition of "learning disabled" under the EAHCA. The decision was again made that David was not learning disabled; despite that fact, however, an individual program was developed to assist David with his writing problem.

## B. 1986–87 Academic Year

At the request of his parents, in June of 1986, David was evaluated by another psychologist, Dr. William, who confirmed the Boston Children's Hospital diagnosis of a learning disability. Dr. William also determined that David would benefit from out-of-class remedial help. Again, the district was *not* notified beforehand of this additional evaluation.

Mrs. Hiller then requested that the school district reconsider David's condition, contending that he was handicapped for purposes of the EAHCA. In September of 1986 at a CSE meeting the CSE voted to classify David as having the handicapping condition of "learning disabled." A Phase I Independent Educational Program ("IEP") was then developed for the 1986–87 academic year. The school district contends that David was labeled learning disabled because the decision was close and the district wished to prevent subsequent litigation by the parents.

The Hillers appealed the IEP, alleging that it did not provide David with an appropriate education. In particular, the Hillers claimed David was not receiving an appropriate education because he was not being allowed to use a word processor full time. The Hillers also sought reimbursement for the two independent psychological evaluations done at their behest. The Hillers made that request for reimbursement even though they had never asked the district to do an additional evaluation; had not asked the district about payment for the independent evaluations; had not requested a list of independent evaluators from the district; and had not asked the district to make a referral to Dr. Williams. Egelston Affidavit at par. 11. Moreover, the Hillers requested reimbursement for the independent evaluations despite the fact that they were aware of their right to question the adequacy of the district's evaluations. *Id.* at par. 12.

An impartial due process hearing was then conducted. The Hearing Officer made several findings, including a denial of plaintiff's request for reimbursement for the independent evaluations. The Hearing Officer cited the Hillers' failure to comply with the Commissioner of Education's regulations pertaining to such reimbursement as the basis for that denial. The Hearing Officer also found the information upon which the CSE relied was "sufficient and appropriate" for the CSE to make its recommendations for David. Additionally, the Hearing Officer found that although the district committed certain due process violations, those violations did not prejudice plaintiff.

The Hillers subsequently appealed the issue of whether the IEP provided David with an appropriate education to the defendant Commissioner of the New York State Department of Education ("Commissioner"). David's eligibility under the EAHCA as a learning disabled child was *not* contested by either party on that appeal, or in the previous appeal. On appeal they also sought reimbursement for the two independent evaluations.

The commissioner, in reviewing the IEP, reclassified David as not handicapped under either state or federal law. In addition, the Commissioner denied plaintiffs' request for reimbursement of the evaluation done at Boston Children's Hospital because plaintiffs obtained that evaluation on their own initiative, and prior to the appeal to the CSE. The Commissioner also denied reimbursement for the second independent evaluation conducted by Dr. William on different grounds. Specifically, that denial was based on the fact that plaintiffs failed to notify the district that they wanted an independent evaluation, thus precluding the district from exercising its right to conduct an impartial hearing on the adequacy of the initial evaluation done by the district psychologist. Finally, the Commissioner found the district's evaluation "adequate to ascertain both the nature of the boy's academic problems and the appropriate measures to remedy that deficit."

On December 3, 1987, this court granted plaintiff's motion for partial summary judgment declaring that the CSE correctly classified David as a handicapped child for the 1986–87 academic year. 674 F.Supp. 73 (N.D.N.Y.1987).

## C. 1987–88 Academic Year

In June, 1987, following the annual review, the CSE unanimously found that David was ineligible for Special Educational Services for the present academic year. The CSE chairperson later clarified that decision indicating that it meant David was no longer handicapped, i.e. learning disabled. Thus, he was not labeled as a child with a handicapping condition for the current academic year. Eggleston Affidavit at pars. 16 and 17. Nevertheless, according to the district, during the 1987–88 academic year, David had been "receiving special education services as if he were labeled a student with a 'handicapping condition' pursuant to his 'then current program.'" *Id.* at par. 18.

On approximately January 19, 1988, however, the Hillers removed David from the district and placed him in Christian Brothers Academy ("CBA"), a private, sectarian school which does *not* provide services to the handicapped, and which is *not* on the State's list of approved private schools for handicapped education. *Id.* at pars. 25 and 26; Wakeman Affidavit (2/9/88) at par. 8. In addition, David's parents "plan to hire an appropriate after school tutor to remediate David's learning disability." Wakeman Affidavit (2/9/88) at par. 8. The estimated cost of the CBA program and the tutor is $1,667.00 per semester. *Id.* at par. 9. The Hillers made the decision to place David at CBA because they believed he was not getting an "appropriate education" in the school district. Hiller Affidavit (3/4/88) at par. 10.

Now plaintiff is seeking leave to amend his complaint pursuant to Fed.R.Civ.P. 15 to receive reimbursement for the cost of his placement at CBA and the hiring of a tutor, which the Hillers believe is necessary for David to receive an appropriate education pending review of these matters. Plaintiff is also seeking to amend his complaint to obtain reimbursement for the cost of the two independent evaluations. Finally, plaintiff is seeking to amend his complaint to include a cause of action under 42 U.S.C. section 1983.

The school district has cross-moved for dismissal of the complaint for failure to state a cause of action upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6), and for Rule 11 sanctions. The State defendants have also cross-moved for dismissal of the complaint asserting, among other things, immunity under the eleventh amendment.

## I. Mootness

Before considering the propriety of allowing plaintiff to amend his complaint, it

is necessary to consider the district's argument that this action has been rendered moot as a result of the Hillers' unilateral withdrawal of David from the district, and his subsequent placement at CBA. The school district contends that this court cannot now award the injunctive and declaratory relief which plaintiff is seeking because of David's unilateral placement at CBA, a non-approved school, and because the CSE cannot implement a meaningful IEP at CBA, which does not offer special education services.

In support of its assertion, the district relies solely upon Judge Platt's decision in *Smrcka By Smrcka v. Ambach*, 555 F.Supp. 1227 (E.D.N.Y.1983). In *Smrcka*, the court held the plaintiff's graduation from the private school for which the parents sought reimbursement rendered the issue of declaratory and injunctive relief moot. *Id.* at 1229. The request for that relief was also rendered moot because the parents did not request any additional referrals for their son. *Id.* As discussed below, *Smrcka* is not dispositive of the present case, however, because even though David is no longer in the district, a number of issues remain, over which this court has jurisdiction to render declaratory and/or injunctive relief.

Plaintiff responds that this action is not moot because of David's removal from the school district. Plaintiff further responds that because this court has jurisdiction to review not only the 1986–87 administrative proceedings, but also the programs in the succeeding years, the Hillers' actions do not mean this action is now moot. In *Application of a Handicapped Child*, 25 Ed.Dept.Rep. 63 (1986), for example, the Commissioner held that the withdrawal of the child from the school district did not render that appeal moot. *Id.* at 65. The Commissioner reasoned that because under the New York Education law a child is entitled to attend school within the dis-

trict without payment of tuition, "the question of what educational program is appropriate to his needs was not rendered moot when he left school." *Id.* Consequently, plaintiff is not precluded from seeking declaratory and injunctive relief on the issue of whether David is a handicapped child, thus entitled to a free appropriate education simply because the Hillers removed David from the district.

Furthermore, notwithstanding the Hillers' failure to initiate a hearing contesting the decision that David was not handicapped for the present academic year, this court, in its independent review of whether David has received an appropriate education in 1985 can hear additional evidence. 20 U.S.C. 1415(e)(2)[3]. *Accord Vander Malle v. Ambach*, 673 F.2d 49, 52 (2d Cir. 1982) (exhaustion is not required because it would be futile in the traditional sense that there is no possibility of a favorable decision); *Riley v. Ambach*, 668 F.2d 635 640–42 (2d Cir.1981). Therefore, even though David is no longer in the district, several issues still remain for this court's determination. First there is the issue of whether David was denied a free appropriate education for the 1985–85 academic year, when the decision was initially made that David was not handicapped. Second there remains the issue of whether the IEP for 1986–87 was inappropriate, thus denying David an appropriate education for that academic year. Third, there remains the issue of the alleged procedural violations from 1985 through the present time. In light of those remaining issues, there is no merit to the district's contention that this action is moot as a result of the Hillers' conduct.

## II. Amendment of the Complaint

Fed.R.Civ.P. 15(a) provides, in pertinent part:

**3.** 20 U.S.C. section 1415(e)(2) provides in pertinent part:

In any action brought under this paragraph the court shall receive the records of the administrative proceedings, *shall hear additional evidence at the request of a party,* and,

basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. section 1415(e)(2) (West 1978) (emphasis added).

[A] party may amend the party's pleading only be leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Although leave to amend should be freely granted under that rule, clearly such leave should be denied where allowing the amendment would cause substantial prejudice to the other party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In addition to prejudice, as the defendants correctly noted, the Supreme Court has stated that leave to amend may be denied, among other things, upon a showing of (1) delay; or (2) futility of the amendment. *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. If the underlying facts of the circumstances relied upon by plaintiff may be a proper subject of relief, however, a plaintiff ought to be afforded an opportunity to test the claim on the merits. *Id.*

In the present case, defendants are not claiming prejudice or undue delay. Rather, they contend that plaintiff's motion to amend must be denied because granting plaintiff leave to amend would be futile. Defendants contend that plaintiff's motion to amend is futile because there is no legal basis for the claims which plaintiff is seeking to include in his complaint. In particular, defendants contend plaintiff is not entitled to reimbursement for the two independent evaluations. Likewise, defendants contend plaintiff is not entitled to reimbursement for either the CBA tuition or the after school tutor. Lastly, defendants contend plaintiff is not entitled to state a claim for compensatory and punitive damages under section 1983.

In the present case, because this is the first time plaintiff has sought leave to amend his complaint, "the policy favoring liberal granting of motions to amend is at its strongest." *Thompson v. New York*

*Life Insurance Co.*, 644 F.2d 439, 444 (5th Cir.1981). In addition, there is absolutely no prejudice to defendants as no discovery has been conducted yet. Therefore, the issue becomes whether allowing plaintiff to amend his complaint would be futile. To determine whether allowing amendment of the complaint here would be futile, it is necessary to consider the merits of the claims which plaintiff is seeking to add.

### A. Reimbursement for Tuition

Plaintiff is seeking to amend his complaint to include a claim for reimbursement of the CBA tuition. The Hillers contend that David was withdrawn from the district because he was not receiving an appropriate education. More specifically, they contend that the IEP for 1986–87 was inappropriate, and that it was not continued pending judicial or administrative review. The Hillers further maintain that David was not placed in a "State-approved" school because those on the private school list did not meet David's needs, and did not offer the least restrictive environment. Therefore, the Hillers did not consider those schools to be an appropriate placement. Thus, they maintain that placement at CBA allows David to be mainstreamed with non-handicapped children. The thrust of the Hillers' position is that denying David an appropriate education[4] during this litigation would essentially render the EACHA meaningless for David.

Defendants assert that because plaintiff never requested a review of the 1987–88 decision and never requested an alternative placement for David, reimbursement cannot be allowed for the CBA tuition. Defendants further assert that because David's parents did not follow the proper procedures for private school placement, and in fact violated the state and federal "stay put" provisions[5], reimbursement is

---

4. The court finds it interesting, and notes in passing, that the Hillers believe that David is being provided an appropriate education at CBA and through the tutor, even though CBA is a private school for non-handicapped children; and it offers no special education programs or services.

5. 20 U.S.C. section 1415(e)(3) expressly states, in part:

During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child

not required. Plaintiff's basic response is that this court should allow plaintiff to state a claim for reimbursement because the Commissioner has been "unclear" as to when reimbursement for non-approved schools should be allowed.

In the seminal case of *Burlington School Committee v. Dept. of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), the Supreme Court held that parental violation of the stay put provision of 20 U.S.C. section 1415 did *not* constitute a waiver of reimbursement. *Id.* at 372, 105 S.Ct. at 2004. Recognizing that judicial and administrative review could take years, "years critical to the child's development," the Court held that section 1415(e)(2), allowing "such relief as the court determines is appropriate" includes the power of district court's to order the equitable remedy of reimbursing the parents at the end of the review process for their expenditures on private special education. *Id.* at 361, 105 S.Ct. at 1998 and 2002–03. Otherwise, the Court noted, "the child's right to a free appropriate education would be less than complete." *Id.* The Court further explained, "Reimbursement merely requires payment for expenses that should have been paid all along" had a proper education been provided. *Id.* at 370–71, 105 S.Ct. at 2003.

In determining whether reimbursement is appropriate, the Supreme Court then adopted a two prong test. More specifically, the Court held that a district court has the power under section 1415(e)(2) of the EACHA to grant such relief as it deems appropriate, and that relief includes reimbursing parents for their expenditures. To be entitled to reimbursement under the EACHA, the *Burlington* Court stated that courts must determine (1) "that a private placement desired by the parent *was proper under the Act*" and (2) "that an IEP calling for placement in a public school was inappropriate...." *Id.* at 370, 105 S.Ct. at 2003 (emphasis added). The Court summed

up the essence of its decision in *Burlington* as follows:

> [P]arents who unilaterally change their placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk. If the court ultimately determines that the IEP proposed by the school officials was appropriate, the parent would be barred from obtaining reimbursement for any interim period in which their child's placement violated section 1415(e)(3).

*Id.* at 373–74, 105 S.Ct. at 2005.

■ At oral argument, defendants strenuously contended that applying the two part test articulated in *Burlington,* reimbursement would not be allowed; and thus plaintiff should not be permitted to amend his complaint to include such a claim. It is the defendants' position that plaintiff cannot establish the first prong of the *Burlington* test because placement at CBA, a non-approved school with no special education services, is "not proper under the Act." Defendants rely heavily upon Second Circuit's recent decision in *Antkowiak v. Ambach*, 838 F.2d 635 (2d Cir.1988), to support that assertion. In *Antkowiak*, the parents sought declaratory and injunctive relief to effect a placement in a non-approved facility. The parents also sought reimbursement from the State for that private placement. The district court granted the relief sought. The Second Circuit reversed, however, holding that under the EACHA, "neither the hearing officer nor the district court could order Lara's placement in an unapproved school." *Id.* at 1313. The Second Circuit explained:

> Neither the SED [State Education Department] nor the Buffalo School Board could place and fund Lara in an unapproved private school "without violating the EHA's requirement that handicapped children be educated at public expense only in those private schools that meet [s]tate educational standards,".... The hearing officer had no jurisdiction to

---

*shall* remain in the then current educational placement of such child....
20 U.S.C. section 1415(e)(3) (West 1978). That language is mirrored in the New York State

Education Law regulations. *See* 8 N.Y.C.R.R. section 200.5.

compel either the school or the state to violate federal law, and thus her decision was void to the extent that it ordered Lara's placement at Hedges without the Commissioner's approval. *Likewise, the district court could not order Lara's placement at Hedges without forcing the SED to violate the EHA.*

*Id.* at 1317 (citation omitted) (emphasis added).

After *Antkowiak,* it is clear that neither the district nor the CSE can place David at CBA without the Commissioner's approval. Likewise, in the absence of the Commissioner's approval, this court also lacks the jurisdiction to order such placement. Neither the district, the CES nor this court have the power to order David's placement at CBA because under N.Y. Education Law section 4420(2)(b)(2), the Commissioner must approve placements at private facilities, and that approval has not obtained here. Thus, because David's placement at CBA would not be considered "proper under the Act," he is unable to meet the first prong of the *Burlington* test; and accordingly, he would not be entitled to reimbursement for that placement. Consequently, David is not entitled to amend his complaint to include a claim for reimbursement of the CBA tuition, because such an amendment would be futile.

## B. Tutor Reimbursement

Plaintiff is also seeking to amend his complaint to include a claim for reimbursement for the proposed after-school tutor. The school district urges that because David's IEP does not require a tutor, and because the hearing officer found David's IEP appropriate, as a matter of law, it cannot be ordered to pay for tutoring expenses. In addition, the school district asserts that because plaintiff failed to demonstrate that the proposed tutor meets the state mandated certification or license requirements,[6] *Antkowiak* precludes the district from reimbursement for the tutoring expenses.

Relying exclusively upon *Fiduccia v. Board of Education,* 85–CV–1365, slip op. (N.D.N.Y.1986), plaintiff responds that he would be entitled to reimbursement for the tutoring expenses. In *Fiduccia* Judge Cholakis held that the parents were entitled to reimbursement for tutoring services unilaterally obtained by the parents, because the school district's IEP was found to be inadequate. Reimbursement was allowed even though the tutor there was not certified to teach handicapped children, and thus the school board would have been prohibited from hiring that same tutor. Without citing any legal authority, Judge Cholakis refused to impose the same legal standard on the Fiduccias as it would impose on the district. In particular, in *Fiduccia* the court implicitly held that although the school district would be required to hire a licensed or certified person to teach children with learning disabilities, the parent of such a child would not be required to hire a licensed or certified tutor. *Id.*

Because *Fiduccia* was decided in 1986, the court there did not have the benefit of the Second Circuit's *Antkowiak* decision. And in light of *Antkowiak,* this court declines to follow the court's reasoning in *Fiduccia.* The court will, however, allow plaintiff to amend his complaint at this juncture to include a claim for reimbursement for tutoring expenses. Leave to amend is granted because presently there is nothing before the court regarding the tutor's qualifications or lack thereof; and thus it is impossible for the court to determine whether plaintiff would qualify for such reimbursement. Therefore, because allowing plaintiff to amend his complaint to add a claim for reimbursement of tuition expenses would not necessarily be futile, plaintiff's motion to amend with respect to that claim is granted. Plaintiff is forewarned, however, that if the tutor does not have the necessary qualifications, the court will certainly look favorably upon a

---

**6.** According to the Commissioner's regulations, "related services shall be provided by individuals with appropriate certification or license in each area of related service." 8 N.Y.C.R.R. section 200.6(b)(3).

summary judgment motion by the school district with respect to this claim.

It should be noted that in support of its position that plaintiff should not be allowed to amend his complaint to assert a claim for reimbursement of tutoring expenses, the school district relies upon *Gregory K. v. Longview School Dist.*, 811 F.2d 1307 (9th Cir.1987). In *Gregory K.* the court found that the parents were not entitled to reimbursement for tutoring expenses because the district's proposed placement was "appropriate," and the tutor was not special education pursuant to an IEP. *Id.* at 1315. The district's reliance on *Gregory K.* is misplaced. Although David's most recent IEP did not require tutoring and the hearing officer found that IEP appropriate, as previously discussed, whether that IEP provided David with an appropriate education under the EACHA is one of the issues for this court's determination. Until that issue is reached, the court is not in a position, as was the court in *Gregory K.*, to conclude that plaintiff should not be entitled to reimbursement for tutoring expenses simply because David's most recent IEP did not provide for such services.

### C. Independent Evaluation Reimbursement

The last item for which plaintiff seeks reimbursement is the two independent evaluations. Pursuant to federal and state law a parent is entitled to *an* independent evaluation at public expense *if* the school evaluation is contested *and* found to be inappropriate. In particular, 34 C.F.R. section 300.503(b) provides:

A parent has the right to *an* independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. However, the public agency may initiate a hearing under section 300.506 of this subpart to show that

its evaluation is appropriate. If the final decision is that the evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense. 34 C.F.R. section 300.-503(b) (1987). In nearly identical language, the New York Education Law regulations provides:

Such notice [notice of initial evaluation] shall:

(vi) indicate that

(a) if the parent disagrees with the evaluation obtained by the school district, the parent has a right to obtain an independent educational evaluation at public expense. However, the school district may initiate an impartial hearing to show that its evaluation is appropriate and, if the hearing officer determines that the evaluation is appropriate, the parent has a right to an independent evaluation but not at public expense;....

8 N.Y.C.R.C. section 2005.5(1)(vi)(a).

■ Turning first to the evaluation done at the Boston Children's Hospital ("the hospital evaluation"), defendants suggest that plaintiff is not entitled to reimbursement for that evaluation because it was obtained before the Hillers appealed to the CSE. Defendants further contend that the Hiller's assertion that they were not advised of their procedural rights must fail because the regulations do not require notification until an appeal is made to the CSE. Even though the regulations do not require notice of the right to an independent evaluation prior to an appeal to the CSE, it can be argued that the regulations do not set a time frame for obtaining an independent evaluation and such was necessary to successfully appeal to the CSE. Therefore, perhaps notice to the district and an impartial hearing are not prerequisites to parents obtaining independent evaluations. Under those circumstances parents are, of course, acting at their own risk in that the initial evaluation may later be deemed to be appropriate. *See e.g., Hudson By and Through Tyree v. Wilson*, 828 F.2d 1059, 1065 (4th Cir.1987) ("The plain thrust of the regulation is that the school can *later* challenge the private testing, and, if it then convinces the administrative reviewers and the district court that its initial evaluation was correct, the parent will not be reimbursed.") Thus, it is possible that plaintiff could eventually be reimbursed for the hos-

pital evaluation despite the fact that it was obtained before the appeal to the CSE, and without notice to the district.

Next defendants contend that plaintiff is not entitled to reimbursement for Dr. William's evaluation because the Hillers failed to follow proper procedure by first notifying the district, so that an impartial hearing could be conducted to determine whether the initial school evaluation was appropriate. *See Application of a Handicapped Child,* 19 Ed.Dept.Rep. 455, 456 (1980) (Commissioner denied application for reimbursement of independent evaluation where the district had no reason to initiate an impartial hearing because the parent never advised the district that they were dissatisfied with the district's psychological evaluation.) Defendants further argue that reimbursement is precluded because the hearing officer and the Commissioner found that the initial evaluation was appropriate.

The district itself, however, never initiated an impartial hearing after learning of the Hiller's disagreement and that they had obtained an independent evaluation. Furthermore, it cannot be ascertained from the record whether the decision that the initial evaluation was appropriate is supported by substantial evidence. Therefore, plaintiff should be allowed to amend his complaint to add a cause of action for reimbursement of both independent evaluations, because such cause of action is not futile. Whether plaintiff will actually succeed on this claim is certainly questionable, however, because reimbursement would only be permitted if the initial evaluation is held to be inappropriate. Moreover, even once that showing is made, plaintiff may only be reimbursed for *one* evaluation. Obviously though the merits of plaintiff's claim for reimbursement for these evaluations do not effect the outcome of this motion to amend.

### D. Section 1983 Cause of Action

Lastly, plaintiff seeks to amend his complaint to include a claim for damages under 42 U.S.C. section 1983, for procedural violations of the EACHA. Plaintiff argues that because a proper IEP is dependent upon proper procedures and proper procedures were not followed her, the resulting IEP is automatically improper. *See Jackson v. Franklin Co. School Bd.,* 806 F.2d 623, 629 (5th Cir.1986) (Failure to meet the EACHA's procedural requirements is adequate reason for holding that the district failed to provide a free appropriate education as mandated by the EACHA); *Hall v. Vance County Bd. of Educ.,* 774 F.2d 629, 635 (4th Cir.1985).

The school district argues, however, that section 1983 actions are not provided for in the 1986 amendments to 20 U.S.C. section 1415, which states as follows:

(f) Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 USCA section 790 et seq] or other Federal statutes protecting the rights of handicapped children and youth, except that before filing of a civil action under such laws seeking such relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Because this amendment contains no specific provision for the Civil Rights Act of 1873, 42 U.S.C. section 1983, the district contends that the plaintiff is not entitled to state a cause of action under section 1983.

The school district's contention that plaintiff is not entitled to at least plead a cause of action under section 1983 is patently absurd in light of the Second Circuit's recent decision in *Mrs. W. V. Tirozzi,* 832 F.2d 748 (2d Cir.1987). In *Tirozzi* the Court held that section 1415(f) was enacted to overrule the Supreme court's decision in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), holding that the EACHA is the exclusive remedy and section 1983 is not available expect in very limited circumstances. After a thorough discussion of the legislative history, the Second Circuit concluded that after the enactment of section 1415(f), plaintiffs are entitled to assert a cause of action under

section 1983 for alleged EACHA violations. Specifically, the Court explained:

Congress stated that section 1415(f) was designed to 're-establish statutory rights as repealed by *Smith v. Robinson*,' and to 'reaffirm, in light of this decision, the viability of . . ., 42 U.S.C. 1983, and other statutes as separate vehicles for ensuring the rights of handicapped children.'

*Id.* at 754–55 (citations omitted). Given the Second Circuit's interpretation of section 1415(f), a section 1983 action clearly is a viable cause of action for this plaintiff. Plaintiff's motion to amend his complaint accordingly, is therefore granted because such amendment would not be futile.

Defendants contend that, at a minimum, plaintiff should not be allowed to state a claim for punitive damages under section 1983. Defendants urge that punitive damages are not appropriate because the district tried to give plaintiff an appropriate education, even though it strongly believes that he is not handicapped. In addition, defendants contend a claim for punitive damages should not be allowed because the procedural violations were held to be non-prejudicial. The record as it is now constituted, however, is insufficient as to the exact nature of the procedural violations. Therefore, it is impossible to tell whether such alleged violations amount to reckless indifference to federally protected rights, thus warranting a punitive damages award. *See Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Consequently, plaintiff's motion to amend his complaint to include a claim for punitive damages under section 1983 should also be granted. As discussed below, however, the punitive damages claim may only be asserted against the school district.

### III. Eleventh Amendment Immunity

■ The State defendants contend that because the EACHA does not expressly abrogate the State's sovereign immunity under the eleventh amendment, plaintiff is barred from seeking retroactive monetary relief and punitive damages from them. It is well settled that the eleventh amendment is a bar to a suit for monetary damages out of State funds. *See, Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973). Therefore, while plaintiff would be entitled to prospective injunctive relief against the State, *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), he is not entitled to monetary relief. Thus, plaintiff's motion to amend his complaint to assert claims for compensatory and punitive monetary damages against the State defendants is denied.

### IV. Rule 11 Sanctions

The school district is seeking rule 11 sanctions against the plaintiff because despite the Second Circuit's holding in *Antkowiak*, David was placed in a non-approved school and plaintiff is now seeking reimbursement for that placement. Although this court does not agree with plaintiff's interpretation of *Antkowiak*, that is that it is strictly a contract case, as opposed to a reimbursement case and thus inapplicable here, the court finds that plaintiff's motion was not interposed for any improper purpose. Therefore, the district's motion for rule 11 sanctions is denied.

Accordingly, it is hereby ordered:

(1) that plaintiff's motion to amend his complaint is denied insofar as he is seeking to include a claim for reimbursement for the Christian Brothers Academy tuition;

(2) that plaintiff's motion to amend his complaint is granted insofar as he is seeking to include claims for reimbursement for tutoring expenses and reimbursement for the two independent evaluations;

(3) that plaintiff's motion to amend his complaint is granted insofar as he is seeking to include a cause of action under 42 U.S.C. section 1983;

(4) that plaintiff's motion to amend his complaint is denied insofar as he is seeking to amend his complaint to include a claim for compensatory and punitive monetary damages against the State defendants;

(5) that the defendant school district's motion for Rule 11 sanctions is denied.

IT IS SO ORDERED.